[L.A. No. 31532. Dec. 27, 1982.]

TERESE TIERNAN, Plaintiff and Appellant, v.
TRUSTEES OF THE CALIFORNIA STATE UNIVERSITY AND
COLLEGES et al., Defendants and Respondents.

212

COUNSEL

Fisher & Moest, Robert C. Moest, David Grosz, Larry J. Roberts, Barry A. Fisher, William M. Kramer and Richard Goldman for Plaintiff and Appellant.

Lawrence Rosenzweig, Levy & Goldman, Michael R. White, Raymond L. Hansen, Charles R. Gustafson and A. Eugene Huguenin, Jr., as Amici Curiae on behalf of Plaintiff and Appellant.

George Deukmejian, Attorney General, Thomas E. Warriner, Assistant Attorney General, and William F. Soo Hoo, Deputy Attorney General, for Defendants and Respondents.

OPINION

**BIRD, C. J.**—This case presents two related questions. (1) Are the Trustees of the California State University and Colleges required to adopt regulations concerning the notice to be given temporary academic employees whose appointments are not going to be renewed? (2) If so, does the trustees' failure to adopt such regulations entitle an employee who is not reappointed to reinstatement or back pay?

I.

Plaintiff, Terese Tiernan, is an archivist and was formerly employed in that capacity at California State University, Northridge (University). Defendants are the Trustees of the California State University and Colleges, and the University's president, vice-president, acting director of personnel, director of libraries, and director of the urban archives center.[1]

On November 30, 1978, defendants wrote to plaintiff, offering her an appointment as an archivist at the University's newly created urban archives center (Center). In their letter, defendants explained that the appointment was a temporary one, "for the remainder of the [1978-1979] academic year," but that it could be renewed "at the option of the University, depending upon the status

---

[1]For convenience, defendants will be referred to collectively.

of the . . . Center . . . and its funding." The letter also stated that the appointment was "subject to the conditions of employment prescribed by the State of California," and set forth in the state Education and Administrative Codes.

Plaintiff replied immediately, accepting the offer and acknowledging its temporary nature. It is undisputed that this was an academic appointment. Plaintiff was given the rank of "lecturer," the title used to designate a "nonpermanent academic assignment." (Cal. Admin. Code, tit. 5, § 42700, subd. (x).)

During the course of the 1978-1979 academic year, the University applied for and was awarded a grant to fund a portion of the Center's activities for a three-year period, beginning in September 1979 and ending in August 1982. The grant proposal named plaintiff as the Center's archivist for each of the three years.

Even before the grant was awarded, the University offered to reappoint plaintiff to the position of archivist for a second year. In her letter of acceptance, plaintiff again acknowledged that the appointment was temporary and noted that it would expire at the end of the 1979-1980 academic year.

In November of 1979, plaintiff was informed that she might not be offered a third appointment. Subsequently, in May of 1980, the director of the Center met with plaintiff and told her that, on his advice, the University had decided not to reappoint her.[2] In order to prevent the nonreappointment from appearing on plaintiff's employment record, the director offered to accept her resignation. He told plaintiff that, should she resign, he would give her "the most favorable recommendation possible." He further advised her that if she chose to contest her nonreappointment, he would "defend his decision" and that she could not then be assured of receiving a favorable recommendation.

Plaintiff did not resign. Instead, she filed a written notice of grievance after receiving formal notice of her nonreappointment from the University. By letter dated June 11, 1980, the University acknowledged receipt of the notice, but informed plaintiff that her grievance could not be heard until "after the beginning of the new academic year on August 25, 1980," when the faculty reconvened. Soon thereafter, plaintiff filed a petition for a writ of mandate in the Los Angeles County Superior Court.

Relying on Education Code section 89534, plaintiff argued that defendants were required to adopt and follow regulations prescribing the "form, time, and method" for giving temporary academic employees notice of their nonreap-

---

[2]The record does not disclose the reasons underlying this decision.

pointment.[3] According to plaintiff, defendants' failure to adopt and follow such regulations rendered her nonreappointment invalid. Plaintiff further asserted that defendants infringed her First Amendment rights by conditioning their offer of a good recommendation on her agreement to resign rather than contest her nonreappointment.

The trial court held that section 89534 applies only to probationary employees "who ha[ve] a reasonable expectation of permanent employment," and not to temporary employees such as plaintiff. The court also rejected plaintiff's First Amendment claim, finding that the University offered plaintiff a good recommendation upon resignation merely as a courtesy and not for purposes of coercing her resignation. Finally, the court declared that plaintiff's failure to exhaust her administrative remedies would bar granting her relief in any event.

Plaintiff appeals.[4]

## II.

■ ■■■ At the outset, this court must decide whether plaintiff's action is barred by the doctrine of exhaustion of administrative remedies.[5]

Executive Order 301 of the Chancellor of the California State University and Colleges (Executive Order) provides a grievance procedure for the resolution of disputes between the University and its academic employees.[6] Under that procedure, plaintiff was required to attempt an informal resolution of her grievance and, if that failed, institute formal proceedings. This she did. However, plaintiff failed to pursue her formal grievance beyond the filing stage

---

[3]Education Code section 89534, subdivision (a), provides, "The trustees shall adopt rules prescribing the form, time and method of notice of rejection at any time during the probationary period to any probationary nonacademic employee, or notice of intention not to recommend reappointment of an academic employee for the succeeding year to any such employee not having permanent status."
Unless otherwise noted, all statutory references are to the Education Code.

[4]In the trial court, plaintiff also argued that under the circumstances of this case, due process required that she be afforded a hearing to protect her reputation. (See *Zumwalt* v. *Trustees of Cal. State Colleges* (1973) 33 Cal.App.3d 665 [109 Cal.Rptr. 344].) Plaintiff has not raised this issue on appeal, however, and it may therefore be deemed waived. (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 425, p. 4391; *Johnston* v. *Board of Supervisors* (1947) 31 Cal.2d 66, 70 [187 P.2d 686].)

[5]"[W]here an administrative remedy is provided by statute, relief must be sought from the administrative body and this remedy exhausted before the courts will act." (*Abelleira* v. *District Court of Appeal* (1941) 17 Cal.2d 280, 292 [109 P.2d 942, 132 A.L.R. 715].)

[6]The Trustees of the California State University and Colleges are required by law to "establish grievance and disciplinary action procedures for all academic employees, including all temporary employees who have been employed for more than one semester or quarter . . . ." (§ 89542.5.) By regulation, the trustees have delegated this responsibility to the chancellor. (Cal. Admin. Code, tit. 5, § 43750.)

before seeking relief in the courts.[7] Defendants contend that this failure bars consideration of plaintiff's claims.

■ It is settled that the rule requiring exhaustion of administrative remedies does not apply where an administrative remedy is unavailable (*Anton* v. *San Antonio Community Hosp.* (1977) 19 Cal.3d 802, 829 [140 Cal.Rptr. 442, 567 P.2d 1162]) or inadequate (*Glendale City Employees' Assn., Inc.* v. *City of Glendale* (1975) 15 Cal.3d 328, 342 [124 Cal.Rptr. 513, 540 P.2d 609]). ■ Plaintiff contends that her claims fall within this settled exception to the exhaustion doctrine.

With respect to plaintiff's charge that her First Amendment rights were violated, it is evident that her claim falls within the rule requiring exhaustion of administrative remedies, not within the exceptions to the rule. Plaintiff has not demonstrated that the grievance procedure available to her was inadequate to resolve her First Amendment claim either because the grievance committee lacked the power to fashion an appropriate remedy or because this issue was beyond the scope of grievance resolution. Moreover, an independent review of the terms of the Executive Order discloses no reason to believe that the grievance procedure was not adequate to resolve this issue. Accordingly, since plaintiff failed to exhaust her administrative remedies, present consideration of this claim is barred.

It is equally clear, however, that the grievance process was ill-suited to resolve plaintiff's other claims. The rules governing the University's grievance procedure provided no avenue by which plaintiff could have advanced her claim that the trustees had a duty to enact regulations governing notice of nonreappointment for temporary employees. Section 2.13.1 of the Executive Order puts "matters . . . which require . . . rule formulation and adoption [by] the Board of Trustees" beyond the scope of grievance resolution.[8] A parallel provision, section 11.4.3, specifically enjoins a grievance committee from including in its recommended orders "any requirement that changes be made in rules and policies . . . of the Board of Trustees." To the extent, therefore, that plaintiff seeks to compel the trustees to adopt regulations governing notice of nonreappointment for temporary employees, her action cannot

---

[7]During oral argument, counsel indicated that plaintiff renewed her formal grievance after the trial court denied her petition for writ of mandate. The grievance committee ultimately rejected her claim.

[8]Section 2.13.1 of the Executive Order reads in full, "A grievance does not include matters, such as the salary structure, which require legislative action. 'Legislative action' means action of a legislative nature, i.e., rule formulation and adoption, at any level of government and, within the California State University and Colleges, [by] the Board of Trustees." (See § 89542.5.)

be held barred by the exhaustion doctrine.[9] (Compare *Anton* v. *San Antonio Community Hosp., supra,* 19 Cal.3d 802 at pp. 828-829.)

Similarly, to the extent that plaintiff claims a right to reinstatement or back pay by virtue of the trustees' failure to adopt such regulations, her action is not barred. It is evident that the grievance committee would have been compelled to refuse to recommend reinstatement in these circumstances. First, any such recommendation would include—sub silentio—the forbidden "requirement that changes be made in [trustees'] rules." (Exec. Order, § 11.4.3.) Moreover, it would necessarily and improperly contravene University policy. (*Ibid.* ["the Committee's recommendation . . . shall not be contrary to law, rule or policy . . . "].) The doctrine of exhaustion of administrative remedies does not require a litigant to present his or her claim to an administrative body powerless to grant relief.

### III.

■ This court must next decide whether the trustees are required by statute to adopt rules governing notice of nonreappointment for temporary employees. Section 89534, subdivision (a) directs the trustees to adopt rules prescribing the "form, time, and method" of notice of termination or of nonreappointment for certain employees. Rules governing notice of termination must be adopted for "probationary nonacademic employee[s]." Rules governing notice of nonreappointment are required for "*academic* employee[s] . . . *not having permanent status.*" (Italics added.) Since neither temporary nor probationary academic employees have "permanent status," the statute's plain language requires rules governing notice of nonreappointment for both these groups.

Despite the statute's clear language, defendants maintain that the Legislature did not intend to require rules regarding nonreappointment for all nonpermanent academic employees, but only for those with *probationary* status. ■ However, if statutory language is "clear and unambiguous there is no need for construction, and courts should not indulge in it." (*Solberg* v. *Superior Court* (1977) 19 Cal.3d 182, 198 [137 Cal.Rptr. 460, 561 P.2d 1148].) Unless defendants can demonstrate that the natural and customary import of the statute's

---

[9]In her petition for writ of mandate plaintiff alleges (1) that the defendants have a "clear, present and ministerial duty to adopt and follow rules" regarding notice to temporary employees; (2) that she has a "clear, present and substantial right" to the performance of that duty; and (3) that she has no "plain, speedy, or adequate remedy" at law. Thus, her petition alleges all the necessary prerequisites to issuance of a writ compelling the trustees to adopt the regulations at issue. (See generally, 5 Witkin, Cal. Procedure (2d ed. 1971) Extraordinary Writs, § 61, p. 3838.) That plaintiff failed to specifically request such relief is immaterial. A court " 'may grant "any relief consistent with the case made by the complaint and embraced within the issue" . . . .' " (*Lacy* v. *Laurentide Finance Corp.* (1972) 28 Cal.App.3d 251, 257 [104 Cal.Rptr. 547], quoting 3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 376, pp. 2039-2040.)

language is either "repugnant to the general purview of the act," or for some other compelling reason, should be disregarded, this court must give effect to the statute's "plain meaning." (2A Sutherland, Statutory Construction (4th ed. 1973) § 46.01, p. 49.)

██ Defendants attempt to find support for their position in the statutory framework. First, they point to section 89533, subdivision (a), which details the rights of *nonacademic* employees with regard to permanent employment.[10] As defendants point out, the protection it affords is limited to those nonacademic employees with probationary status. Second, defendants note that section 89534 itself, insofar as it requires notice to *nonacademic* employees, requires it only for probationary nonacademic employees. Since the Legislature has restricted the reach of these statutes to nonacademic employees who are classified as "probationary," defendants aver that the Legislature must have intended similarly to restrict the reach of section 89534 to academic employees having probationary status.

The simple answer to this assertion is that if the Legislature had intended to so limit the statute's reach, it would have clearly said so. Moreover, an examination of the statutory context reveals a simple explanation for the disparity in the treatment of academic and nonacademic employees.

The law governing appointment, tenure, and dismissal of California State University and College employees is set forth in division 8 of the Education Code. (See § 89530 et seq.) For purposes of that article, *all* nonacademic employees are classified as either probationary or permanent. (§ 89531.)[11] By

---

[10]Subdivision (a) of section 89533 provides, "Any nonacademic employee shall be required to serve only one probationary period to gain permanent status in a position or in a substantially similar position. If such an employee is promoted to a position with substantially different duties or to a position that requires additional duties and abilities, he shall serve an additional probationary period; but if he does not become permanent in the new position, he shall have the right to return to any class in which he was permanent or to the class in which he was serving before his promotion. An employee who is promoted before he completed the probationary period in the lower class and is returned to such class without having become permanent in the new position shall receive credit toward permanent status in the lower class for the period of time he had previously performed satisfactorily therein. An employee who is promoted before he completed the probationary period in the lower class shall earn permanent status in the lower class at the end of one year from the original appointment date in the lower class, provided the duties in the higher class are substantially similar to the duties in the lower class and the employee's performance in both classes has been satisfactory."

[11]Section 89531, subdivision (a), reads, "*Every* nonacademic employee shall be appointed for one year which is a probationary period. On reappointment for the second year, the employee shall be permanent at the same level and salary step or higher salary step as at completion of the probationary year." (Italics added.) Of course, the trustees may have the power to hire nonacademic employees on a temporary basis. (See, e.g., §§ 89517, 89552, subd. (a)(1).) In light of the unambiguous language of the quoted statute, however, those sections must be considered irrelevant to the interpretation of division 8.

contrast, academic appointments may be temporary, probationary, or permanent (i.e., tenured). (Cal. Admin. Code, tit. 5, § 42700, subd. (j).) The fact that the statutory scheme does not provide protection for temporary *nonacademic* employees, then, is simply irrelevant to the legislative treatment of temporary *academic* employees.[12]

In a last attempt to avoid the express requirements of section 89534, defendants maintain that it is absurd and illogical to require notice of nonreappointment for temporary employees whose appointments have a fixed expiration date. According to defendants, such notice may reasonably be required only for probationary employees who have a reasonable expectancy of reemployment.

The distinction that defendants seek to draw between probationary and temporary academic employees in this context is simply not persuasive. Both classes of employees are hired for annual appointments of fixed and limited duration. (See Cal. Admin. Code, tit. 5, § 43561.) It is true that only probationary academic employees can, by virtue of a certain period of service, obtain the right to be considered for tenure.[13] Also, in some areas, probationary employees enjoy greater rights than temporary employees.[14] The procedural protection provided by section 89534, subdivision (a) is, however, as vital to temporary employees as it is to probationary employees. A reasonable time, form, and method of notice of nonreappointment is an important safeguard for both temporary and probationary employees who may be required to seek other employment. Additionally, uniform procedures bolster morale by minimizing the risk of arbitrary or prejudiced procedures. (*American Federation of Teachers* v. *Oakland Unified Sch. Dist.* (1967) 251 Cal.App.2d 91, 97 [59 Cal.Rptr. 85].) Thus, the Legislature could quite reasonably have concluded that the notice required by section 89534 was as necessary to temporary academic employees as it was to probationary academic employees.

Since there is no indication that the language of section 89534 is contrary to the Legislature's intent, this court is obliged to give effect to the statute's "plain meaning." The statute requires the adoption of regulations governing notice of nonreappointment for all "academic employee[s] . . . not having permanent status." This class clearly includes temporary employees.

---

[12]Section 89534 is entitled, "Notice of rejection or intention not to recommend reappointment of *probationary* employees . . . ." (Italics added.) Defendants wisely do not argue that this heading is indicative of legislative intent. "[S]ection headings do not in any manner affect the scope, meaning, or intent of the provisions of [the Education Code.]" (§ 5.)

[13]See California Administrative Code, title 5, section 43560 et seq.

[14]For example, only a probationary employee is protected by statute against dismissal without "cause" *before* the expiration of his or her appointment. (§ 89535.)

## IV.

There remains the question of what remedy, if any, is appropriate. ■ Plaintiff assumes that the trustees' failure to adopt the rules required under section 89534 renders her nonreappointment invalid. Accordingly, she urges this court to order her reinstatement, or, if that is not feasible, to award back pay.

Plaintiff's position finds some support in the law. Courts often hold that an agency's action dismissing an employee is void if taken in violation of the agency's own regulations. (See, e.g., *Layton* v. *Merit System Commission* (1976) 60 Cal.App.3d 58, 63 [131 Cal.Rptr. 318]; see also *Gratehouse* v. *United States* (Ct. Cl. 1975) 512 F.2d 1104, 1108 and cases cited therein.) In that situation, reinstatement may be an appropriate remedy. (*California Sch. Employees Assn.* v. *Personnel Commission* (1970) 3 Cal.3d 139, 145-146 [89 Cal.Rptr. 620, 474 P.2d 436]; *Vitarelli* v. *Seaton* (1959) 359 U.S. 535, 545-546 [3 L.Ed.2d 1012, 1020, 79 S.Ct. 968].)

Where, however, the procedural error complained of is deemed harmless, neither reinstatement nor back pay is generally considered appropriate. (*Gratehouse* v. *United States, supra,* 512 F.2d at p. 1108 [collecting cases]; cf. *California Teachers Assn.* v. *Nielsen* (1978) 87 Cal.App.3d 25, 28 [149 Cal.Rptr. 728].) In this case, plaintiff has not shown that she suffered any prejudice as a result of the defendants' failure to adopt rules regarding notice. As early as November of 1979, just two months after the beginning of her second appointment, plaintiff was warned that she might not be offered a third appointment. Thus, six months before the end of her appointment, plaintiff was put on notice that her reappointment was not assured. Under these circumstances, plaintiff might have been expected to initiate inquiries concerning her status. Instead, she simply awaited the University's final decision. She cannot now reasonably claim that she was surprised by that decision or that the defendants' failure to adopt and follow regulations requiring proper notice prejudiced her in any way.

■ ■■ ■ Neither reinstatement nor an award of back pay is therefore appropriate here.[15]

---

[15]In her brief before this court, plaintiff asserts for the first time another argument in support of her claim to reinstatement. She argues that the circumstances of her employment gave her a valid "expectancy of reemployment." (*Balen* v. *Peralta Junior College Dist.* (1974) 11 Cal.3d 821, 831 [114 Cal.Rptr. 589, 523 P.2d 629].) She claims that this expectancy made her a "de facto" probationary employee entitled to all the procedural rights of such an employee.

As noted, this contention was raised for the first time in her petition before this court. In order to prevail, plaintiff must make some showing that her classification as a temporary employee was a sham designed by defendants to "circumvent proper classification." (*Balen* v. *Peralta Junior College Dist., supra,* 11 Cal.3d at p. 830.) The general rule is that defendants "should not be required to defend for the first time on appeal against a new theory that 'contemplates a factual situation the consequences of which are open to controversy and were not put in issue or

## V.

The judgment of the superior court is reversed, with directions to issue a writ of mandate commanding respondents to issue the regulations required under section 89534.[16]

Mosk, J., Kaus, J., Broussard, J., and Cologne, J.,* concurred.

Richardson, J., and Reynoso, J., concurred in the result.

Appellant's petition for a rehearing was denied February 10, 1983, and the opinion was modified to read as printed above. Grodin, J., did not participate therein.

---

presented at the trial.' [Citation.]" (*Ward* v. *Taggart* (1959) 51 Cal.2d 736, 742 [336 P.2d 534].) The proper forum for initial consideration of this claim was the trial court—plaintiff may not raise it for the first time here. (See generally, 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, §§ 281, 288, pp. 4269, 4275.)

[16]In so doing, this court expresses no opinion as to what kind of notice procedure would be appropriate under the circumstances.

*Assigned by the Chairperson of the Judicial Council.