[No. B018020. Second Dist., Div. Three. June 25, 1986.]

CITY OF POMONA, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
BROCO, INC., et al., Real Parties in Interest.

1094

COUNSEL

Morris, Polich & Purdy, Theodore P. Polich, Jr., Gerald P. Schneeweis and Steven M. Crane for Petitioner.

No appearance for Respondent.

Roper & Folino and Joseph L. Stark for Real Parties in Interest.

OPINION

DANIELSON, J.—The City of Pomona (City) seeks a writ of mandate compelling the superior court to vacate its order denying the City's motion for partial summary judgment in consolidated actions for damages and a cross-action for indemnity arising out of the City's closure of a cave on City property and to enter a new and different order granting City's motion for partial summary judgment. We deny the petition and remand the cause for reconsideration in the light of this opinion.

### FACTS AND PROCEDURAL HISTORY

The City is a defendant, cross-complainant and cross-defendant in a number of consolidated actions pending in respondent superior court. The plaintiffs are numerous property owners who allegedly sustained damage as a result of the April 20, 1982 closure of a cave in the Westmont Hills area of the City by real party in interest Broco, Inc. (Broco), a demolition and explosives contractor hired by the City for that purpose. Broco is named

as a defendant, cross-complainant and cross-defendant in the consolidated actions.

In its answer to the fourth amended complaint, the City set forth several affirmative defenses, including the absolute immunity provided to local government entities by Government Code section 866[1] for action taken to abate an impending peril caused by gradual earth movement.

Broco cross-complained against the City for implied and express indemnity.

The City moved for partial summary judgment on all causes of action brought by the plaintiffs, and on all causes of action brought by Broco, except Broco's cause of action based on express indemnity. The motion was based, inter alia, on the City's claim of immunity under section 866. Documents supporting the motion established that on April 12, 1982, a child was killed by falling rocks while playing in the cave. On the day following the accident, the cave was inspected by City officials for the purpose of determining the extent of its instability and considering possible methods of closing it. A geological and soils engineering firm retained by the City determined that the cave was extremely unstable due to a combination of "water seepage, erosion and the force of gravity, causing a gradual move-

---

[1]Government Code section 866: "(a) Subject to the provisions of subdivisions (b) and (c), in the event of public necessity to avoid impending peril to persons or property as a result of gradual earth movement, a local public entity is not liable for damages or injury to persons or property resulting from such impending peril or from any action taken to abate such peril providing the legislative body of the local public entity has, on the basis of expert opinion or other reasonable basis, done all of the following:

"(1) On the basis of adequate evidence such as expert opinion or otherwise, found the existence of such impending peril.

"(2) Determined appropriate remedial action to halt, stabilize, or abate such impending peril.

"(3) Undertaken to implement such remedial action.

"As used in this chapter, 'gradual earth movements' includes, but is not limited to, perceptible changes in the earth either in a subterranean area or at the surface, or both, which if not arrested or contained will over a gradual period of time result in damage to or destruction of underground or aboveground property or harm to persons. . . .

"(b) If the local public entity is unable to complete the steps described in paragraphs (1) and (3), inclusive, of subdivision (a) because of the cessation of the hazard or because such actions cannot be completed before the occurrence of the hazard sought to be avoided, or because such legislative body of such entity shall reasonably determine that such remedial action will not abate such danger, the immunity provided herein shall nevertheless apply to such actions by such local public entity.

"(c) The immunity provided herein is in addition to any other immunity of the local public entity provided by law or statute, including this part, and any claim of liability based upon the impending peril or any action of the local public entity is subject to such immunities and any defenses that would be available to the local public entity if it were a private person."

Unless otherwise specified, all statutory references are to the Government Code.

ment and deterioration of the roof and walls" of the cave structure over a period of time. The firm recommended that explosives be used to collapse the cave and render it inaccessible.

Jerome Brower, Broco's chief engineer, an explosive and demolition expert experienced in cave demolition, also examined the City's cave, and, after discussing various alternatives with City officials, recommended that explosives be used to close it.

The city council approved a resolution authorizing the mayor to enter into a written contract with Broco for the cave demolition, and the agreement was executed. The detonation was carried out by Broco on April 20, 1982. Although the cave was successfully collapsed, a number of homes in a development below the hill on which it was situated incurred damage by reason of the explosion.

Plaintiffs opposed the City's motion for partial summary judgment on the ground that there was a factual question for determination by the jury as to whether the City's decision to close the cave with explosives constituted a determination of "appropriate remedial action." Some of the plaintiffs also contended there was a triable issue of fact as to whether there was "gradual earth movement" so as to bring into play the provisions of section 866.

Broco opposed the City's motion for partial summary judgment on the ground that the City expressly indemnified Broco against the risk of harm to plaintiffs.

In reply memorandums, the City pointed out that the plaintiffs presented no counterdeclarations, affidavits or other evidentiary matter rebutting the City's showing supporting application of section 866, and that the City's motion with respect to Broco was limited to Broco's causes of action based on equitable or implied indemnity.

At a hearing held on November 12, 1982, the court looked to section 865,[2] wherein the Legislature declared its purpose in enacting section 866,

---

[2]Section 865: "The Legislature hereby finds and declares that: "(a) The gradual movement of land, such as in prehistoric slide areas, or as a result of subsidence due to the depletion of underground or subterranean supporting substances, such as minerals, petroleum sources, water, and similar substances, can result in danger to persons or property. Although the movement is gradual and expressed in terms of numbers of inches, feet or meters per day, week or year, at some point the forces that are exerted by the movement will sever underground utilities, such as water, sewer, gas, electricity or telephone services and can cause the destruction of aboveground structures whose foundations become undermined or where support is denied altogether. Unlike an earthquake or rapid rockslide or landslide, these

and determined that section 866 did not apply to the facts established by the moving papers as a matter of law. The court determined that the purpose of section 866 was to provide an incentive to a local governmental entity to take action where it would not otherwise be required to do so. Here, the court found, the City was otherwise required to abate the dangerous condition caused by the cave pursuant to the provisions of section 835.[3] The City's motion for partial summary judgment was denied.

The City moved for reconsideration of the order denying the motion, and a further hearing was held on December 12, 1985. There, the court stated: "It is clear from the declarations and the evidence that a dangerous condition did exist. There is no representation, no evidence to the contrary that this dangerous condition was one caused by gradual earth movement. There is no evidence to the contrary that public necessity [was] involved in terms of whether action should be taken. [¶] [Section] 835 . . . places a liability upon a public entity who maintains property . . . upon which there is a known hazardous condition. [Section] 835.4[4] . . . relieves or grants im-

---

gradual earth movements permit possible intervention to arrest the movement and avoid harm which is posed to persons or property. If there is an adequate manifestation of the problem before actual harm to persons or property, it is possible to make some determinations as to a method of remedial action which can abate the hazard. However, any undertaking to arrest the earth movement may not be successful or may have within it the potential for hastening the movement and the damages resulting from such movement. Regardless of how slight that potential for aggravating the damages, local public entities are unwilling to undertake action to alleviate the hazard if such undertaking may invite potential liability.

"(b) It is the intent of the Legislature in enacting this chapter to create an incentive for local public entities, upon learning of the particular earth movement which will result in possible damage to substantial areas of property and constitute a threat of injury to persons, to undertake remedial action to abate the earth movement or protect against the danger therefrom without fear of incurring liability as a result of undertaking such action."

[3]Section 835: "Except as provided by statute, a public entity is liable for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either:

"(a) A negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or

"(b) The public entity had actual or constructive notice of the dangerous condition under Section 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition."

[4]Section 835.4:

"(a) . . . . . . . . . . . . . . . . . . . . .

"(b) A public entity is not liable under subdivision (b) of Section 835 for injury caused by a dangerous condition of its property if the public entity establishes that the action it took to protect against the risk of injury created by the condition or its failure to take such action was reasonable. The reasonableness of the action or inaction of the public entity shall be determined by taking into consideration the time and opportunity it had to take action and by weighing the probability and gravity of potential injury to persons and property foreseeably exposed to the risk of injury against the practicability and cost of protecting against the risk of such injury."

munity for local entity action that is reasonable in combatting the risk created by the condition of the land. Yet they [must] proceed in a reasonable fashion." The court again found that the legislative purpose in enacting section 866 was to encourage local governmental entities to take action where they were otherwise not required to do so, and that the City was otherwise required to do so in this case under section 835. The court concluded that its earlier order should stand, and so ruled. The present petition followed.

## ISSUE

The issue presented by this petition is whether section 866 grants immunity to a local governmental entity for damages resulting from the entity's action taken to abate peril due to gradual earth movement on its own property. We conclude that it does, providing the entity establishes that it has fulfilled the three conditions set forth in the statute.

## DISCUSSION

 Broco urges that we look to the legislative history of the statute in order to determine its meaning. "However, if statutory language is 'clear and unambiguous there is no need for construction, and courts should not indulge in it.' [Citation.] Unless [Broco] can demonstrate that the natural and customary import of the statute's language is either 'repugnant to the general purview of the act,' or for some other compelling reason, should be disregarded, this court must give effect to the statute's 'plain meaning.' [Citation.]" (*Tiernan* v. *Trustees of Cal. State University & Colleges* (1982) 33 Cal.3d 211, 218-219 [188 Cal.Rptr. 115, 655 P.2d 317]; Code Civ. Proc., § 1858.)

Broco also looks to the statutory framework, urging that the trial court properly found that inasmuch as the City was obligated by section 835 to correct dangerous conditions of its property, and immunized from liability under section 835.4 for reasonable action or inaction taken with respect to such conditions, section 866 should be read as granting immunity to the City when it acts to abate a peril due to gradual earth movement only on non-City-owned property. As the court stated concerning another statute in *Tiernan* v. *Trustees of Cal. State University & Colleges, supra,* 33 Cal.3d at p. 219: "The simple answer to this assertion is that if the Legislature had intended to so limit the statute's reach, it would have clearly said so." Moreover, we find no disharmony in the statutory scheme when each of its parts is accorded its plain meaning.

 Section 835 imposes a general duty upon public entities with respect to dangerous conditions of its property, and section 835.4 grants immunity

for reasonable action or inaction taken pursuant to that duty. Section 866 is a specific statute which by its language encourages local governmental entities to act to abate impending peril to persons or property due to gradual earth movement, granting immunity from liability resulting from the peril itself or action taken to abate it, provided the entity has complied with the requirements of the section. "Specific statutory immunities . . . may . . . properly limit dangerous condition liability in particular cases. Section 835 contemplates that this will be so, for it specifically qualifies the rules of dangerous condition liability by the introductory phrase, 'except as provided by statute.'" (Van Alstyne, California Government Tort Liability Practice (Cont.Ed.Bar 1980) § 3.50, pp. 270-271.)

██ "The general scheme of the California Tort Claims Act of 1963 (Gov. Code, § 810 et seq.) is that 'except as otherwise provided by statute' a public entity is not liable for tortious injuries, and that the liabilities established by the act are subject to the statutory immunities. Government Code section 815 provides: 'Except as otherwise provided by statute: [¶] (a) A public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person. [¶] (b) The liability of a public entity established by this part (commencing with Section 814) is subject to any immunity of the public entity provided by statute, including this part, and is subject to any defenses that would be available to the public entity if it were a private person.'" (*Grenell* v. *City of Hermosa Beach* (1980) 103 Cal.App.3d 864, 871-872 [163 Cal.Rptr. 315].)

The legislative committee comment to section 815 clarifies that "In general, the statutes imposing liability are cumulative in nature, i.e., if liability cannot be established under the requirements of one section, liability will nevertheless exist if liability can be established under the provisions of another section. On the other hand, under subdivision (b) of this section, the immunity provisions will as a general rule prevail over all sections imposing liability. [¶] Where the sections imposing liability or granting an immunity do not fall into this general pattern, the sections themselves make this clear."

██ We find nothing in the present statutory scheme to suggest that the Legislature meant other than what it said when it enacted section 866. We hold that the immunity there described applies to the City, and that the trial court erred in determining to the contrary.

The motion for partial summary judgment must be reconsidered in light of all of the factors set forth in section 866. We therefore note that in this fact situation, "appropriate remedial action" includes not only the decision

to use explosives to close the cave, but also the taking of appropriate measures for the protection of nearby residents and property.

DECISION

The alternative writ of mandate is vacated.

The cause is remanded to the respondent court with instructions to vacate its order denying the motion for summary judgment and to reconsider the motion in accordance with the views expressed herein.

Lui, Acting P. J., and Arabian, J., concurred.