TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

|  |  |  |
|---|---|---|
| OPINION | : | |
| | : | No. 96-517 |
| of | : | |
| | : | September 16, 1996 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| CLAYTON P. ROCHE | : | |
| Deputy Attorney General | : | |
| | : | |

_____

THE HONORABLE RICHARD K. RAINEY, MEMBER OF THE CALIFORNIA ASSEMBLY, has requested an opinion on the following question:

If a physician's spouse sells her ownership interest in a physical therapy facility at its fair market value, may the physician thereafter refer his patients to the facility for physical therapy services?

CONCLUSION

If a physician's spouse sells her ownership interest in a physical therapy facility at its fair market value, the physician may thereafter refer his patients to the facility for physical therapy services.

ANALYSIS

In 1993 the Legislature enacted one statute and amended another dealing with referrals of patients by physicians to medical facilities in which they have financial interests. In the context of these two 1993 enactments, we are asked whether a physician may refer his patients to a physical therapy facility after his spouse has sold her ownership interest in the facility at its fair market value. We conclude that the physician may do so.

1.                                                                                                    96-517

The Legislature enacted the Physicians Ownership and Referral Act of 1993 (Bus. & Prof. Code, §§ 650.01, 650.02),[1] the effects of which were summarized in part in the Legislative Counsel's Digest of Assembly Bill No. 919 (1993-1994 Reg. Sess.) as follows:

"Existing law provides that, except as otherwise specified, the offer, delivery, receipt, or acceptance, by prescribed licensed health professionals of any rebate, refund, commission, preference, patronage dividend, discount, or other consideration, whether in the form of money or otherwise, as compensation or inducement for referring patients, clients, or customers to any person, irrespective of any membership, proprietary interest, or co-ownership in or with any person to whom these patients, or clients, or customers are referred, is unlawful, punishable as a misdemeanor or felony. Existing law also provides that it is not unlawful for a person to refer a person to a laboratory, pharmacy, clinic, or health care facility, as defined, solely because the licensee has a proprietary interest or co-ownership in the facility.

"This bill would provide that, notwithstanding any other provision of law, including the above-described provisions of law, it is a misdemeanor for a licensee, including a physician and surgeon, psychologist, optometrist, dentist, podiatrist, or chiropractor, to refer a person for laboratory, diagnostic nuclear medicine, radiation oncology, physical therapy, physical rehabilitation, psychometric testing, home infusion therapy, or diagnostic imaging, as defined, goods or services if the licensee has a financial interest, as defined, with the person, or in the entity, that receives the referral."

The basic prohibition of the legislation is contained in section 650.01, which states:

"(a) Notwithstanding Section 650, or any other provision of law, it is unlawful for a licensee to refer a person for laboratory, diagnostic nuclear medicine, radiation oncology, physical therapy, physical rehabilitation, psychometric testing, home infusion therapy, or diagnostic imaging goods or services if the licensee or his or her immediate family has a financial interest with the person or in the entity that receives the referral.

"(b) For purposes of this section and Section 650.02, the following shall apply:

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(2) A `financial interest' includes, but is not limited to, any type of ownership interest, debt, loan , lease, compensation, remuneration, discount, rebate, refund, dividend, distribution, subsidy, or other form of direct or indirect payment, whether in money or otherwise, between a licensee and a person or entity to whom the licensee refers a person for a good or service specified in subdivision (a). A financial interest also exists if there is an indirect relationship between a licensee and the referral recipient including, but not limited to, an arrangement whereby a licensee has an

---

[1]All references hereafter to the Business and Professions Code are by section number only.

ownership interest in an entity that leases property to the referral recipient. *Any financial interest transferred by a licensee to any person or entity or otherwise established in any person or entity for the purpose of avoiding the prohibition of this section shall be deemed a financial interest of the licensee.* For purposes of this paragraph, 'direct or indirect payment' shall not include a royalty or consulting fee received by a physician and surgeon who has completed a recognized residency training program in orthopedics from a manufacturer or distributor as a result of his or her research and development of medical devices and techniques for that manufacturer or distributor. For purposes of this paragraph, 'consulting fees' means those fees paid by the manufacturer or distributor or distributor to a physician and surgeon who has completed a recognized residency training program in orthopedics only for his or her ongoing services in making refinements to his or her medical devices or techniques marketed or distributed by the manufacturer or distributor, if the manufacturer or distributor does not own or control the facility to which the physician is referring the patient.

"(3) For the purposes of this section, `immediate family' includes the spouse and children of the licensee, the parents of the licensee, and the spouses of the children of the licensee.

"(4) `Licensee' means a physician as defined in Section 3209.3 of the Labor Code.

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ."  (Italics added.)

Section 650.02 provides various exceptions to the prohibitory language of section 650.01:

"The prohibition of Section 650.01 shall not apply to or restrict any of the following:

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(b) A licensee, when the licensee or his or her immediate family has one or more of the following arrangements with another licensee, a person, or an entity, is not prohibited from referring a patient to the licensee, person, or entity because of the arrangement:

"(1) A loan between a licensee and the recipient of the referral, if the loan has commercially reasonable terms, bears interest at the prime rate or a higher rate that does not constitute usury, is adequately secured, and the loan terms are not affected by either party's referral of any person or the volume of services provided by either party.

"(2) A lease of space or equipment between a licensee and the recipient of the referral, if the lease is written, has commercially reasonable terms, has a fixed periodic rent payment, has a term of one year or more, and the lease payments are not affected

by either party's referral of any person or the volume of services provided by either party.

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(5) A one-time sale or transfer of a practice or property or other financial interest between a licensee and the recipient of the referral if the sale or transfer is for commercially reasonable terms and the consideration is not affected by either party's referral of any person or the volume of services provided by either party.

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(k) This section shall not apply to referrals for services that are described in and covered by Sections 139.3 and 139.31 of the Labor Code.

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ."

Similar provisions are found in the Labor Code with specific regard to a physician's referral of a patient who has filed a workers' compensation claim. In 1993 Labor Code section 139.3 was amended (Stats. 1993, ch. 121, § 20; ch. 1242 § 19) to provide as follows:

"(a) Notwithstanding any other provision of law, to the extent those services are paid pursuant to Division 4 (commencing with Section 3200), it is unlawful for a physician to refer a person for clinical laboratory, diagnostic nuclear medicine, radiation oncology, physical therapy, physical rehabilitation, psychometric testing, home infusion therapy, or diagnostic imaging goods or services whether for treatment or medical-legal purposes if the physician or his or her immediate family has a financial interest with the person or in the entity that receives the referral.

"(b) For purposes of this section and Section 139.31, the following shall apply:

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(2) `Immediate family' includes the spouse and children of the physician, the parents of the physician, and the spouses of the children of the physician.

"(3) `Physician' means a physician as defined in Section 3209.3.

"(4) A `financial interest' includes, but is not limited to, any type of ownership, interest, debt, loan, lease, compensation, remuneration, discount, rebate, refund, dividend, distribution, subsidy, or other form of direct or indirect payment, whether in money or otherwise, between a licensee and a person or entity to whom the physician refers a person for a good or service specified in subdivision (a). A financial interest also exists if there is an indirect relationship between a physician and the referral recipient, including, but not limited to, an arrangement whereby a physician has an

ownership interest in any entity that leases property to the referral recipient. *Any financial interest transferred by a physician to, or otherwise established in, any person or entity for the purpose of avoiding the prohibition of this section shall be deemed a financial interest of the physician.*

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ." (Italics added.)

Labor Code section 139.31 permits physician referrals as follows:

"The prohibition of Section 139.3 shall not apply to or restrict any of the following:

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(b) A physician who has one or more of the following arrangements with another physician, a person, or an entity, is not prohibited from referring a patient to the physician, person, or entity because of the arrangement:

"(1) A loan between a physician and the recipient of the referral, if the loan has commercially reasonable terms, bears interest at the prime rate or a higher rate that does not constitute usury, is adequately secured, and the loan terms are not affected by either party's referral of any person or the volume of services provided by either party.

"(2) A lease of space or equipment between a physician and the recipient of the referral, if the lease is written, has commercially reasonable terms, has a fixed periodic rent payment, has a term of one year or more, and the lease payments are not affected by either party's referral of any person or the volume of services provided by either party.

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ."

In analyzing the terms of section 650.01 and Labor Code section 139.3, we are guided by well established principles of statutory construction. "When interpreting a statute our primary task is to determine the Legislature's intent. [Citation.]" (*Freedom Newspapers, Inc.* v. *Orange County Employees Retirement System* (1993) 6 Cal.4th 821, 826.) "To determine the intent of legislation, we first consult the words themselves, giving them their usual and ordinary meaning. [Citations.]" (*DaFonte* v. *Up-Right, Inc.* (1992) 2 Cal. 4th 593, 601.) When "`statutory language is . . . clear and unambiguous there is no need for construction, and courts should not indulge in it.'" (*Rojo* v. *Kliger* (1990) 52 Cal.3d 65, 73.) The plain meaning of words in a statute may be disregarded only when that meaning is "`repugnant to the general purview of the act,' or for some other compelling reason. . . ." (*Tiernan* v. *Trustees of Cal. State University & Colleges* (1982) 33 Cal.3d 211, 219.)

The purposes in enacting sections 650.01 and 650.02 were declared by the Legislature as follows:

"(b) It is recognized by the Legislature that the referral of a patient by a health care provider to a provider of health care services in which the referring health care provider has an investment interest represents a potential conflict of interest.

"(c) The Legislature finds these referral practices may limit or eliminate competitive alternatives in the health care services market, may result in overutilization of health care services, may increase costs to the health care system, and may adversely affect the quality of health care.

"(d) The Legislature also recognizes, however, that it may be appropriate for providers to own entities providing health care services, and to refer patients to those entities, as long as certain safeguards are present in the arrangement.

"(e) It is the intent of the Legislature to provide guidance to health care providers regarding prohibited patient referrals between health care providers and entities providing health care services and to protect the citizens of California from unnecessary and costly health care expenditures."  (Stats. 1993, ch. 1237, § 1.)

In 70 Ops.Cal.Atty.Gen. 65, 67 (1987), we stated with respect to the general statutory limitations placed upon referrals by licensed health professionals:

"The purposes of section 650 are to protect the public from excessive health care costs (*Mason* v. *Hosta*, *supra*, 152 Cal.App.3d 980, 986), referrals based upon considerations other than the best interests of the patients (68 Ops.Cal.Atty.Gen. 140, 144 (1985)), deceit and fraud (63 Ops.Cal. Atty.Gen. 89, *supra*, 91), and payment to a licensee where professional services have not been rendered (16 Ops.Cal.Atty.Gen. 18, *supra*, 21).  (See also 68 Ops.Cal.Atty.Gen. 28, *supra*, 31; 65 Ops.Cal.Atty.Gen. 252, 253 (1982); 53 Ops.Cal.Atty.Gen. 117, 118 (1970).) . . . . "

It is evident that the 1993 additions under consideration herein were to limit even further "referrals based upon considerations other than the best interests of the patients."  Where a physician or a family member owns an interest in a health facility, a conflict of interest exists which could be detrimental to patients through possible excessive referrals or excessive charges being imposed.

Returning to the express terms of section 650.01 and Labor Code section 139.3, we find that a physician may not refer a patient to a physical therapy facility if his spouse has a "financial interest" in the facility.  Here we are given that the spouse has completely disposed of her ownership interest in the facility, so the basic prohibition would be inapplicable.

Of course, if the spouse enters into an installment sales contract or assists in financing the purchase price, she would retain a financial interest in the facility as defined in section 650.01, subdivision (b)(2) and Labor Code section 139.3, subdivision (b)(4).  It might benefit the physician to refer his patients to the facility under such circumstances so that the new owner would be financially able to complete the purchase agreement.  However, we note that section 650.02, subdivision (b)(5) would allow the physician to refer patients where he has previously owned the facility and its sale is

"for commercially reasonable terms and the consideration is not affected by either party's referral of any person or the volume of services provided by either party." In any event, we assume here that the physician's wife has not retained any financial "relationships" with her former business.

This brings us to the most ambiguous language of the two statutory prohibitions: "Any interest transferred by a licensee to any person or entity or otherwise established in any person or entity for the purpose of avoiding the prohibition of this section shall be deemed a financial interest of the licensee" (§ 650.01, subd. (b)(2)) and "Any financial interest transferred by a physician to, or otherwise established in, any person or entity for the purpose of avoiding the prohibition of this section shall be a financial interest of the physician" (Lab. Code, § 139.3, subd. (b)(4)).

We have examined the legislative histories of the two enactments in question and have found no clarifying declaration for these definitional ambiguities. It would be unreasonable to conclude, however, that a physician could not terminate all financial or personal ties to a health facility in order to be exempt from the prohibition against referrals. Such a conclusion would be inconsistent with the terms of subdivision (b)(5) of section 650.02 which allows transfers "for commercially reasonable terms and the consideration is not affected by either party's referral of any person or the volume of services provided by either party."

We believe that the transfer limitations in question must be read in light of the Legislature's purposes in prohibiting physician referrals. The proscribed transfers are those where the physician would retain an incentive for referring patients to the health facility without regard solely to the best interests of his patients. For example, a transfer to someone with close personal ties to the physician, but who is not a member of his immediate family, could be "for the purpose of avoiding the prohibition" resulting in the physician retaining an impermissible conflict of interest. The critical issue is whether the physician has any financial or personal dealing with the transferee so as to cause a violation of the statute. Assuming here that neither the physician nor his spouse has any financial or personal relationship with the transferee, the physician may thereafter refer his patients to the medical facility.

We conclude that if a physician's spouse sells her ownership interest in a physical therapy facility at its fair market value, the physician may thereafter refer his patients to the facility for physical therapy services.

* * * * *