[No. D035478. Fourth Dist., Div. One. Nov. 1, 2000.]

In re LIAM L., a Person Coming Under the Juvenile Court Law.
SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY,
Plaintiff and Appellant, v.
RICHARD L., Defendant and Respondent.

**COUNSEL**

John J. Sansone, County Counsel, Susan Strom, Chief Deputy County Counsel, and Kathryn E. Krug, Deputy County Counsel, for Plaintiff and Appellant.

Linda M. Fabian, under appointment by the Court of Appeal, for Defendant and Respondent.

Suzanne F. Evans, under appointment by the Court of Appeal, for Minor.

742

## OPINION

**O'ROURKE, J.**—San Diego County Health and Human Services Agency (Agency) appeals an order and judgment of the juvenile court determining Richard L. to be the presumed father of Liam L. Agency contends the court erred in concluding that Richard was a presumed father based solely on a voluntary declaration of paternity (Fam. Code, § 7570 et seq.)[1] signed by Richard and Liam's mother, Hidey E. We affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

Liam was born in January 2000 with an imperforate anus, and doctors performed a colostomy on him one day after his birth. The day following the surgery, Hidey and Richard signed a voluntary declaration of paternity at the hospital on a form prepared by the Health and Welfare Agency of the California Department of Social Services.

Hospital employees placed a hold on Liam and referred the family to Agency because of concerns regarding the parents' ability to care for Liam. Hidey and Richard missed two scheduled training sessions to teach them colostomy care, and Richard presented himself at the hospital with alcohol on his breath on several occasions. In addition, Richard and Hidey did not have stable housing. They were living at a motel and a local charity paid for their room.

On February 8, 2000, Agency filed a petition under Welfare and Institutions Code section 300, subdivision (b), alleging that Hidey and Richard were unable to provide specialized care for Liam's medical needs. Both Richard and Hidey completed paternity questionnaires that identified Richard as Liam's father. However, Hidey was married to David E. who was considered Liam's presumed father by marriage. Hidey had lost all contact with David and efforts to locate him were unsuccessful.

At the jurisdiction hearing, the court considered the issue of paternity. The court granted Richard's request for presumed father status based on the voluntary declaration of paternity that he signed at the hospital where Liam was born. The court sustained the petition, declared Liam a dependent, and ruled that Agency had undertaken due diligence in its unsuccessful attempts to locate Hidey's husband, David.

Observing that its rulings resulted in two presumed fathers, the court conducted further hearings "to conduct the public policy balancing of the

---

[1] All statutory references are to the Family Code unless otherwise specified.

two fathers" under section 7612, subdivision (b). The court found Richard to be Liam's sole presumed father and entered a paternity judgment in Richard's favor. In its disposition order, the court placed Liam in a licensed foster home and ordered reunification services for both Hidey and Richard.

DISCUSSION

The sole issue raised on appeal is whether a voluntary declaration of paternity executed and filed in compliance with section 7570 et seq., entitles the male signatory to presumed father status in dependency proceedings. The resolution of this issue depends solely on statutory interpretation and is subject to our independent review. (*People v. Woodhead* (1987) 43 Cal.3d 1002, 1007-1008 [239 Cal.Rptr. 656, 741 P.2d 154].) Before determining whether Richard is entitled to presumed father status, we briefly summarize background law regarding voluntary declarations of paternity.

A

*Voluntary Declarations of Paternity*

In 1993, our Legislature enacted section 7570 et seq.,[2] providing for establishment of paternity by voluntary declaration. Section 7570, subdivision (b), declares there is a compelling state interest in establishing a simple system allowing for establishment of voluntary paternity, so that there will be a "significant increase in paternity establishment, an increase in the number of children who have greater access to child support and other benefits, and a significant decrease in the time and money required to establish paternity due to the removal of the need for a lengthy and expensive court process to determine and establish paternity . . . ." (*Ibid.*)

Since January 1, 1995, California hospitals have been required to provide a form for voluntary declaration of paternity with explanatory materials to every unmarried woman who has given birth to a child.[3] (§ 7571, subd. (a).) The Department of Child Support Services, California Association of Hospitals and Health Systems, and other affected health organizations have developed and drafted materials explaining our state's program for voluntary declaration of paternity. (§ 7572, subd. (a).) The explanatory materials are attached to the declaration form and must warn parents that: (1) signing and filing the declaration establishes paternity; (2) legal rights and obligations of

---

[2]Statutes 1993, chapter 1240, section 1, page 7107.

[3]Similarly, the person responsible for registering live births must attempt to provide the natural father with a form and explanatory materials for voluntary declaration of paternity (§ 7571.)

the parents and the child result from establishment of paternity; (3) the alleged father has the constitutional right to have the issue of paternity decided by a court; and (4) by signing the voluntary declaration of paternity, the father waives that constitutional right. (§ 7572, subd. (b).)

The form for the voluntary declaration must contain: (1) the names and signatures of both the mother and father; (2) the name and date of birth of the child; (3) a statement by the mother that she has read and understood the explanatory forms, that the man signing the declaration of paternity is the only possible father, and that she consents to the establishment of paternity; (4) a statement by the father that he has read and understood the explanatory forms, that he understands by signing the declaration he waives his rights as described in the explanatory materials, that he is the child's biological father, and that he consents to the establishment of paternity; and (5) the name and signature of the hospital staff member who witnessed the parents' execution of the paternity declaration. (§§ 7574, subd. (b), 7571, subd. (a).)

Here, Richard and Hidey both signed a voluntary declaration of paternity two days after Liam's birth, declaring that Richard was Liam's father. The Health and Welfare Agency of the California Department of Social Services prepared the form signed by the parents and witnessed by a hospital employee.[4] The first page of the form warned the parents that a properly executed declaration would "legally establish the man as the child's father without going to court. This will give the father *parental rights* such as the right to seek child custody and visitation through a court action and to be consulted about the adoption of the child." (Italics added.) The materials further cautioned that "[a] signed declaration of paternity will have the same effect as a court order establishing paternity for the child. If your child does not live with you and a court action is filed, you may be ordered to pay child support."

The program for voluntary declaration of paternity originally provided that a voluntary declaration of paternity gave rise to a conclusive presumption of paternity.[5] (Former § 7571, subd. (b), added by Stats. 1993, ch. 1240, § 1, p. 7108.) However, amendments to the Family Code no longer provide for a conclusive presumption of paternity for declarations executed on or

---

[4]The record on appeal contains the signed paternity declaration but not the materials that explain to the parents the legal consequences of signing the declaration. We previously granted Richard's request for judicial notice of the explanatory materials that would have been attached to the paternity declaration form that was signed by Richard and Hidey. The parties do not dispute that the declaration and supporting materials complied with all the requirements mandated by section 7570 et seq.

[5]Despite the original statute's use of the term "conclusive presumption of paternity" (former § 7574; see also 7571, subd. (b) both added by Stats. 1993, ch. 1240, § 1, pp. 7108-7109), there were provisions for rebutting that presumption by blood tests (see former § 7575, subd. (a) added by Stats. 1993, ch. 1240, § 1, p. 7110).

after January 1, 1997. (cf. § 7576.)[6] Instead, such declarations signed by the parents and filed with the Department of Social Services "establish the paternity of a child and . . . have the same force and effect as a judgment for paternity issued by a court of competent jurisdiction. The voluntary declaration of paternity shall be recognized as a basis for the establishment of an order for child custody, visitation, or child support." (§ 7573.) Here, Richard and Hidey signed the voluntary declaration of paternity on January 30, 2000, and the declaration established that Richard was Liam's father with the same force and effect as a paternity judgment.[7]

B

*Effect of Voluntary Declarations of Paternity on Parental Status in Dependency Proceedings*

■ The statutes governing dependency proceedings differentiate the rights of presumed, natural, and alleged fathers. (*In re Zacharia D.* (1993) 6 Cal.4th 435, 438 [24 Cal.Rptr.2d 751, 862 P.2d 751].) The Uniform Parentage Act of 1973, originally adopted by our Legislature as Civil Code section 7000 et seq. and reenacted without substantive change as Family Code section 7600 et seq. (*Adoption of Michael H.* (1995) 10 Cal.4th 1043, 1049, fn. 1 [43 Cal.Rptr.2d 445, 898 P.2d 891, 61 A.L.R.5th 769]), distinguishes between presumed and merely biological fathers. (*In re Zacharia D., supra,* 6 Cal.4th at pp. 448-449.) "A biological or natural father is one whose biological paternity has been established, but who has not achieved presumed father status . . . . A man who may be the father of a child, but whose biological paternity has not been established, or, in the alternative, has not achieved presumed father status, is an 'alleged' father. [Citation.]" (*Id.* at p. 449, fn. 15.)

"In order to become a presumed father, a man must fall within one of the several categories enumerated in [former] Civil Code section 7004, subdivision (a) [now Family Code section 7611]." (*In re Zacharia D., supra,* 6 Cal.4th at p. 449.) Section 7611 provides several different scenarios under which a man may achieve presumed father status, including the more typical situation where the man is the presumed father of a child because he "receives the child into his home and openly holds out the child as his natural child." (§ 7611, subd. (d).) The law gives presumed father status to

---

[6]However, there is still a conclusive presumption of paternity arising from voluntary declarations of paternity signed on or before December 31, 1996. (§ 7576, subd. (a).)

[7]The record on appeal is silent as to whether the paternity declaration was filed with the Department of Social Services as required by section 7571, subdivision (a). However, Agency does not contend there was any error in the form, execution or filing of the paternity declaration.

those who have taken an active role in their children's lives, and such fathers are generally entitled to all the rights afforded to parents in dependency proceedings, including reunification services. (*In re Zacharia D., supra,* 6 Cal.4th at pp. 448, 451.)

In 1994, the Legislature amended section 7611 to provide that a man is also "presumed to be the natural father of a child if he meets the conditions provided in . . . Chapter 3 (commencing with Section 7570)," which contains the provision for establishment of paternity by voluntary declaration. Where statutory language is clear and unambiguous, there is no need for construction. (*Tiernan v. Trustees of Cal. State University & Colleges* (1982) 33 Cal.3d 211, 218-219 [188 Cal.Rptr. 115, 655 P.2d 317].) Clearly, the Legislature intended that a man who had met the statutory conditions (§ 7611), or rather established paternity by a voluntary declaration in compliance with all of the requirements of section 7570 et seq., was entitled to presumed father status.

In addition, "[i]t is a well-established principle of statutory construction that when the Legislature amends a statute without altering portions of the provision that have previously been judicially construed, the Legislature is presumed to have been aware of and to have acquiesced in the previous judicial construction." (*Marina Point, Ltd. v. Wolfson* (1982) 30 Cal.3d 721, 734 [180 Cal.Rptr. 496, 640 P.2d 115, 30 A.L.R.4th 1161].) Here, the Legislature added language to section 7611 in 1994, providing that establishment of paternity by voluntary declaration was an additional means for an unwed father to achieve presumed father status. That was one year *after* our state's highest court in *In re Zacharia D., supra,* 6 Cal.4th 435, held that an unwed father must meet one of the conditions for paternity contained in Civil Code section 7004, now Family Code section 7611, in order to achieve presumed father status in dependency proceedings. (*In re Zacharia D., supra,* 6 Cal.4th at p. 449.)

We reject Agency's contention that a voluntary declaration of paternity signed after December 31, 1996, no longer entitles an unwed father to presumed father status. Agency erroneously claims that by changing the legal effect of voluntary paternity declarations signed after December 31, 1996, from a conclusive presumption of paternity to "merely" an establishment of paternity with the same force and effect as a paternity judgment, the Legislature intended that voluntary paternity declarations would no longer entitle the male signatory to presumed father status. In making this contention, Agency confuses a "conclusive presumption of paternity" with "presumed father status." We stress that former Civil Code section 7004, now Family Code section 7611, plainly sets forth the categories and conditions

for presumed father status (*In re Zacharia D., supra,* 6 Cal.4th at p. 449), with one recently added category being men who have established paternity by the statutory declaration form. Although the Legislature has changed the effect of voluntary declarations of paternity executed after December 31, 1996, from a conclusive presumption of paternity to establishment of paternity with the effect of a court judgment, voluntary declarations of paternity signed on or after January 1, 1997, continue to entitle the male signatory to presumed father status. The juvenile court correctly determined that Richard is Liam's presumed father.

C

*California Code of Regulations*

Finally, we note that our reading of the statutory scheme parallels the interpretation given to it in regulations regarding adoptions promulgated by the California Department of Social Services.[8] Under California Code of Regulations, title 22, section 35000, subdivision (p)(11), " 'Presumed father' means a father as defined at Family Code section 7611." The regulations further provide that "[a] man who completes a voluntary declaration of paternity pursuant to Family Code Sections 7573 and 7574 . . . *after January 1, 1997 is considered to be a presumed father* and his parental rights to the child shall be terminated as those of a presumed father." (Cal. Code Regs., tit. 22, § 35108, subd. (e)(3), italics added.)

■ We acknowledge that an administrative agency's interpretation of statutes represents that "agency's view of the statute's legal meaning and effect, questions lying within the constitutional domain of the courts. But because the agency will often be interpreting a statute within its administrative jurisdiction, it may possess special familiarity with satellite legal and regulatory issues." (*Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 11 [78 Cal.Rptr.2d 1, 960 P.2d 1031].) Hence, the interpretation of sections 7611 and 7570 by the California Department of Social Services is at least entitled to "some consideration" by this court. (*Yamaha Corp. of America v. State Bd. of Equalization, supra,* 19 Cal.4th at p. 15.) ■ We agree with and adopt the Department of Social Services' conclusion that a voluntary declaration of paternity that is in compliance with all the requirements of section 7570 et seq., and was signed and filed on or after January 1, 1997, entitles the father to presumed father status in dependency proceedings.

---

[8]The parties did not cite or discuss these regulations in their briefs.

## DISPOSITION

Judgment and order affirmed.

Kremer, P. J., and McIntyre, J., concurred.