**Norvald L. ULVESTAD, As Trustee for the Norvald L. Ulvestad Trust, Plaintiff,**

**v.**

**CHEVRON U.S.A., INC., a corporation; and DOES 2 through 100 inclusive, Defendants.**

**No. SACV 91–296–GLT.**

United States District Court, C.D. California.

April 6, 1993.

Gibson, Dunn & Crutcher, Joel S. Moskowitz, Jeffrey D. Dintzer, Los Angeles, CA, for plaintiff Norvald L. Ulvestad as Trustee for Norvald L. Ulvestad Trust.

Linda Sutton, Michael A. Taitelman, Alschuler, Grossman & Pines, Los Angeles, CA, for defendant Chevron U.S.A. Inc.

James R. Cutright, Acting Chief Counsel, Joan A. Markoff, Staff Atty., California Environmental Protection Agency Dept. of Toxic Substances Control, Sacramento, CA, for State of Cal., Dept. of Toxic Substances Control, for amicus curiae.

## ORDER GRANTING MOTION TO DISMISS THIRD AND FOURTH CAUSES OF ACTION

TAYLOR, District Judge.

This case raises the issue, on apparent first impression, whether the petroleum exclusion provision of California's Hazardous Substance Account Act excludes refined petroleum from the Act's regulation. The court holds that, like the federal act (CERCLA, or "Superfund") after which it is modeled, the California Act excludes regulation of refined petroleum, including gasoline.

## I. BACKGROUND

Plaintiff Ulvestad owns property in Santa Ana contaminated with gasoline leaked from underground storage tanks. A former owner built a filling station on the property in 1926, and installed four underground storage tanks between 1926 and 1938. In 1953 Signal Oil Company, predecessor of defendant Chevron, U.S.A., Inc., leased the property. Independent Signal dealers operated the station from about 1953 to 1966, when Signal quitclaimed

its leasehold interest, and the property was sold to the plaintiff's mother. Title subsequently passed to the Ulvestad trust.

Afterward, the service station was dismantled, and three of the four underground tanks were extracted. Plaintiff was alerted to the existence of a fourth tank by the Santa Ana Fire Department, removed it in 1989, and discovered that gasoline from the tanks had contaminated the soil and groundwater. Plaintiff now sues Chevron on various theories.

Chevron argues that plaintiff's third and fourth causes of action for response costs and declaratory relief under California's Carpenter–Presley–Tanner Hazardous Substance Account Act, Cal. Health & Safety Code §§ 25300–25395, should be dismissed because refined petroleum is excluded from the reach of the Act.[1] Defendant points out the Act contains a "petroleum exclusion" provision that removes petroleum from the Act's definition of "hazardous substances." Plaintiff, joined by Amicus California Department of Toxic Substances Control, argues the exclusion does not apply to refined petroleum products, such as gasoline.

## II. DISCUSSION

■ Section 25316 of California's Hazardous Substance Account Act defines "hazardous substances" broadly to include a number of different dangerous chemicals listed in various state and federal laws. However, section 25317 of the Act excludes from the definition (and therefore the Act) "[p]etroleum, including crude oil or any fraction thereof which is not otherwise specifically listed or designated as a hazardous substance...." Cal. Health & Safety Code § 25317. The issue in this case is whether the exclusion applies to refined petroleum products, such as gasoline.

"When interpreting state law, a federal court is bound by the decision of the highest state court." *In re Kirkland,* 915 F.2d 1236, 1238 (9th Cir.1990) (citing *Dimidowich v. Bell & Howell,* 803 F.2d 1473, 1482 (9th

---

1. Defendant also argues that the Carpenter–Presley–Tanner Hazardous Substance Account Act § 25363(e) neither creates an independent private right of action nor provides for declaratory relief. In view of the court's ruling, these issues are not reached.

Cir.1986), *reh'g denied, op. modified*, 810 F.2d 1517 (9th Cir.1987). However, this court is unaware of any published opinion from either a higher California court or any federal court addressing the issue of whether the petroleum exclusion provision in California's Act applies to refined petroleum.

■ Although no controlling authority appears to exist, "[f]ederal courts are not precluded from affording relief simply because neither the state Supreme Court nor the state legislature has enunciated a clear rule governing a particular type of controversy." *Paul v. Watchtower Bible and Tract Soc. of New York, Inc.*, 819 F.2d 875, 879 (9th Cir.), *cert. denied*, 484 U.S. 926, 108 S.Ct. 289, 98 L.Ed.2d 249 (1987). When a decision turns upon applicable state law, and the state's highest court has not adjudicated the issue, a district court must make a reasonable determination, based upon recognized sources such as statutes and published opinions, as to the result the court would reach if faced with the issue. *Henkin v. Northrop Corp.*, 921 F.2d 864, 867 (9th Cir.1990).

### A. *Plain Meaning*

The California Supreme Court has long held that analysis of state statutes begins with "the fundamental premise that the objective of statutory interpretation is to ascertain and effectuate legislative intent." *Kimmel v. Goland*, 51 Cal.3d 202, 208, 271 Cal. Rptr. 191, 793 P.2d 524 (1990) (citations omitted). In ascertaining intent, the court "look[s] first to the language of the statute, giving effect to its 'plain meaning.'" *Id.* at 209, 271 Cal.Rptr. 191, 793 P.2d 524 (citing *Tiernan v. Trustees of Cal. State University & Colleges*, 33 Cal.3d 211, 218–19, 188 Cal. Rptr. 115, 655 P.2d 317 (1982)).

If the plain meaning is apparent, this court need not go further. The California Supreme Court is clear concerning statutory interpretation:

> To determine the intent of legislation, we first consult the words themselves, giving

them their usual and ordinary meaning. When "statutory language is ... clear and unambiguous there is no need for construction, and courts should not indulge in it." The plain meaning of words in a statute may be disregarded only when that meaning is " 'repugnant to the general purview of the act,' or for some other compelling reason...."

*DaFonte v. Up–Right, Inc.*, 2 Cal. 4th 593, 601, 7 Cal.Rptr.2d 238, 828 P.2d 140 (1992) (citations omitted).

The starting point for deciding whether the terms of the Act apply to gasoline is section 25317's petroleum exclusion. That section states expressly that petroleum, crude oil, and crude oil "fractions" are excepted from the Act's reach, provided those fractions are not themselves listed hazardous substances. A crude oil fraction is a mixture or chemical compound derived from crude oil through "cracking" or a distillation process; as a compound obtained through the distillation process, gasoline is universally acknowledged to be a crude oil fraction. *See Hawley's Condensed Chemical Dictionary* 892 (11th ed. 1987) (Gasoline is among "[t]he most important petroleum fractions, obtained by cracking or distillation...."). Thus, because gasoline is a crude oil fraction, but is not a specifically listed hazardous substance, *see* Cal. Health & Safety Code §§ 25316(a)–(f), a plain reading of the statute reveals gasoline is exempt from the Act.

This is the same result reached by the Ninth Circuit in interpreting the almost identical statute in the petroleum exclusion provision of the federal Superfund law.[2] In *Wilshire Westwood Assoc. v. Atlantic Richfield*, 881 F.2d 801, 803 (9th Cir.1989) the Ninth Circuit considered whether leaded gasoline and its various constituent parts—including benzene, toluene, and xylene (the same constituents alleged by plaintiffs in this action)—fall within the scope of the federal CERCLA petroleum exclusion. The court found the "plain meaning" of the exclusion in CERCLA

---

**2.** The petroleum exclusion provision in the Comprehensive Environmental Response, Compensation, and Liability Act ("Superfund") is contained within the statute's definition of the term "hazardous substance" and states: "The term

[hazardous substance] does not include petroleum, including crude oil or any fraction thereof which is not otherwise specifically listed or designated as a hazardous substance...." 42 U.S.C. § 9601(14).

made it "unnecessary" to resort to legislative history and agency interpretation of the exclusion. The court held that "the petroleum exclusion in CERCLA does apply to unrefined and refined gasoline even though certain of its indigenous components and certain additives during the refining process have themselves been designated as hazardous substances within the meaning of CERCLA." *Id.* at 810. The logic in *Wilshire Westwood* is compelling here.

Plaintiff does not offer an alternative reading of the statute, but challenges this interpretation of section 25317 on two fronts.

First, plaintiff argues that two California courts have examined the scope of the exclusion and decided it should not apply to refined petroleum. However, neither case is persuasive. *Sachs v. Exxon Co. U.S.A.,* 9 Cal.App.4th 1491, 12 Cal.Rptr.2d 237 (1992), *modified and reh'g denied,* 10 Cal.App.4th 1512B, *review denied,* (Dec. 17, 1992), merely mentions the Act in dicta, stating "we do not express any opinion with respect to the scope of the petroleum exclusion set forth in [the Act].... " *Id.* 9 Cal.App.4th at 1497, n. 4, 12 Cal.Rptr.2d 237. *Torrinello v. Johnson,* No. 645739 (San Diego Superior Court, filed March 27, 1992) is an unpublished trial court minute order overruling, without analysis, a demurrer based on the Act's petroleum exclusion, with the trial court only assumed for purposes of the demurrer that responsible regulatory agencies could consider refined petroleum products to be included in the Act.

■ Second, both plaintiff and Amicus Department argue that the petroleum exclusion contained in the Act precludes state regulation only of unrefined petroleum and crude oil. Once petroleum and crude oil are refined, they argue, the refined petroleum is subject to state regulation if it is a specifically listed hazardous substance or if it *contains* specifically listed hazardous substances.[3] Therefore, it is argued, because the materials that leaked from the tanks were alleged to be "refined petroleum, along with other hazardous substances, including but not limited to, benzene, toluene, and xylene," Fourth Amended Complaint at 4, ¶ 11, the petroleum exclusion does not apply. This argument is not convincing.[4] The Act contains a specific exclusion for petroleum and its fractions. The language of section 25317 specifically requires the *fractions*—not the components of the fractions—to be listed hazardous substances in order to be subject to the Act.[5]

Each statute in California is to be read " 'to harmonize the statutory scheme and not to produce absurd results,' " *In re Jonathan O.,* 11 Cal.App.4th 1647, 1650, 15 Cal.Rptr.2d 80 (1992) (citations omitted). This court is obligated to follow the unambiguous language of the statute. The plain meaning of the Act's petroleum exclusion requires dismissal of plaintiff's third and fourth causes of action for cost recovery and declaratory relief under the Act.

### B. *Agency Interpretation*

Moving beyond the plain meaning of the Act, plaintiff argues that the Amicus California Department of Toxic Substance Control has, since the Act's inception, interpreted the petroleum exclusion in a manner supporting the plaintiff's position. As the agency responsible for enforcing the Act, the Department's interpretation should ordinarily be accorded considerable weight and deference. However, the Department's interpretation is not persuasive here.

---

3. Amicus maintains this broad reading "is the same method used to evaluate any potential release of hazardous substances into the environment under the [Act]." For example, the agency explains that even though paint is not a specifically listed hazardous substance, it will be treated as such where there is a paint spill and a hazardous substance is detected in the area of the release.

4. This argument was considered and rejected in *Wilshire Westwood,* 881 F.2d at 805.

5. Paragraph 34 of his Fourth Amended Complaint alleges that some of the contaminants released by Chevron onto the premises include "refined petroleum, toluene, xylene, and benzene...." If plaintiff contended that toluene, xylene, or benzene were spilled *separately* from the refined petroleum (and not as component parts of the petroleum), those separate chemicals could be classified as "hazardous substances" under section 25316. However, plaintiff has not asserted this interpretation of his claim.

First, the Department's interpretation of the petroleum exclusion provision is directly contrary to the EPA's and Ninth Circuit's interpretation of the nearly identical provision within the federal Superfund statute. *Wilshire Westwood,* 881 F.2d at 803–10.

Second, the cited cases deferring to an agency's interpretation of a state statute are distinguishable because the interpretation was generally adopted after formal notice and comment proceedings. *See, e.g., Pitts v. Perluss,* 58 Cal.2d 824, 832, 27 Cal.Rptr. 19, 377 P.2d 83 (1962) (formally adopted regulation on disability insurance held reasonable where intricate and technical nature of the subject matter not within expertise of the court). Here, on the other hand, the Department has not formally promulgated regulations concerning its interpretation of the Act's petroleum exclusion provision. Instead, it declares only that the interpretation is necessary to reflect the Act's "broad remedial purpose." This is not compelling.

Amicus Department argues that its narrow interpretation of the Act's petroleum exclusion clause is consistent with Congress' express intent in CERCLA to allow states to regulate more comprehensively than is permitted under federal law (citing CERCLA's savings provision at 42 U.S.C. § 9614). However, although the California Legislature may have been empowered by Congress to strictly regulate the clean-up of petroleum spills as hazardous substances, the California statute's wording reveals the Legislature declined to do so. The court cannot ignore the plain wording of the Act, which, like its federal counterpart, excludes refined petroleum from the ambit of the Act's influence.

The fact that the Legislature has annually reviewed and approved the Department's expenditure of funds from both the Act and the 1984 Bond Fund for refined petroleum con-tamination remediation cannot be taken as tacit approval of the Department's position here. In fact, it appears the Legislature acknowledges the limited reach of the Act concerning refined petroleum spills: In 1989, the Legislature established the Petroleum Underground Storage Tank Cleanup Program in California Health and Safety Code § 25299. That Chapter's express purpose is to deal with the problems associated with leaking underground petroleum tanks, and nowhere does that statute alter or amend the California Superfund's petroleum exclusion provision. *See* Cal. Health & Safety Code § 25299.10 (stating Legislative findings concerning leaking underground petroleum tanks).[6]

■ Finally, Amicus argues that the funding of the Underground Storage Tank Program was derived from the California Superfund Act. Amicus contends that, in appropriating these funds from the Act's Bond Fund (§ 25385.6), the Legislature knew that the expenditure was governed by § 25310's "well established" principle that all the limitations contained in the Act carry over to the new program. This assertion is unfounded for two reasons: (1) Section 25310 contains the Act's "Definitions," and nowhere does that section limit Bond Fund expenditures to the terms of the Act, and (2) the provisions of the Bond Fund authorize several possible expenditures from the Fund (for example, to provide the state share of remedial action costs under the federal Superfund), but the terms of the Fund nowhere *prohibit* the Legislature from using the Fund for other purposes. Accordingly, it is reasonable to assume that the Legislature designed the Underground Tank Program as a response to the shortcomings of the Act and its inapplicability to refined petroleum spills.

---

6. The California statute was adopted pursuant to United States Code Title 42, Chapter 82, Subchapter IX. Section 6991b(h), added by Section 205 of the Superfund Amendments and Reauthorization Act of 1986 ("SARA"), Pub.L.99–499, 100 Stat. 1613, establishes a separate program to respond to petroleum leaking from underground storage tanks and allows underground storage tanks to be regulated pursuant to a state program, rather than a federal program, in states authorized to implement these provisions. Both Congress and the California Legislature, therefore, have shown a preference that spilled petroleum and hazardous substances be treated separately. *See also Wilshire Westwood Assoc. v. Atlantic Richfield,* 881 F.2d 801, 805–08 (9th Cir. 1989) (examining legislative history of Superfund's petroleum exclusion clause in light of later amendments to the statute and concluding that Congress intended to address spilled petroleum from underground tanks separately from spilled hazardous wastes).

### III. DISPOSITION

In light of the plain meaning of section 25317's language excluding refined petroleum and its constituents from the Act, the EPA's and Ninth Circuit's broad interpretation of the nearly identically-worded "petroleum exclusion" in federal CERCLA, and the apparent intent of the Legislature to leave refined petroleum out of the Act, defendant's motion to dismiss the causes of action rooted in the Act must be granted.

The court realizes the concerns this ruling may raise. Without clarifying action by the California Legislature, today's holding could impede future efforts by the Department to enforce clean-ups under the Act involving refined petroleum spills. Nevertheless, the plain meaning of the Act's petroleum exclusion is inescapable. In the absence of controlling authority, this court is compelled to reach this conclusion. It is for the California Legislature, not the courts, to clarify the Act if the Legislature wants to include refined petroleum. Accordingly, plaintiff's third and fourth causes of action under the Act are

DISMISSED.