[No. B067256. Second Dist., Div. Three. Mar. 25, 1994.]

KFC WESTERN, INC., Plaintiff and Appellant, v.
ALAN MEGHRIG et al., Defendants and Respondents.

**COUNSEL**

Daniel Romano for Plaintiff and Appellant.

James R. Cutright, Joan A. Markoff and Richard W. Sherwood as Amici Curiae on behalf of Plaintiff and Appellant.

McClintock, Weston, Benshoof, Rochefort, Rubalcava & MacCuish, John P. Zaimes, Kathleen E. Roberts and Rebecca A. Thompson for Defendants and Respondents.

Baker & Hostetler, Donna R. Black and Bradley R. Hogin as Amici Curiae on behalf of Defendants and Respondents.

## OPINION

**KLEIN, P. J.**—Plaintiff and appellant KFC Western, Inc. (KFC) appeals a judgment of dismissal following the sustaining of a demurrer without leave to amend interposed by defendants and respondents Alan Meghrig and Margaret Meghrig (the Meghrigs) to KFC's first amended complaint.

The issues presented include: whether KFC's cause of action under Health and Safety Code section 25363[1] against the previous owners of its property, which had been the site of a gasoline station, to recover the costs of cleaning up contaminated soil is barred by the petroleum exclusion of section 25317;[2, 3] and whether KFC may pursue common law claims against the previous owners for continuing nuisance and continuing trespass.

For the reasons discussed, we conclude the cost recovery action under section 25363 is barred because section 25317 excludes refined petroleum. However, with respect to the nuisance and trespass claims, KFC is entitled to amend. The judgment therefore is reversed in part and remanded and otherwise is affirmed.

### FACTUAL AND PROCEDURAL BACKGROUND

In September 1975, for $152,000 the Meghrigs sold certain real property on Western Avenue in Los Angeles to KFC which operated a Kentucky Fried Chicken franchise on the property. Unbeknownst to KFC at the time of the purchase, the property allegedly has been contaminated by the release of refined petroleum products from the operation of a gasoline station and/or leakage from underground storage tanks on the site. This resulted, inter alia, in elevated levels of lead and benzene in the soil. In October 1988, while improving the property, KFC through its engineer discovered the contaminated soil.

The City of Los Angeles Department of Building and Safety issued a corrective notice ordering all construction at the property to stop pending an analysis of the contaminated soils and the obtaining of a clearance from the

[1]All further statutory references are to the Health and Safety Code, unless otherwise specified.

[2]Section 25317 excludes petroleum from the definition of hazardous substances.

[3]Extensive amicus curiae briefs have been filed by the California Department of Toxic Substances Control (the Department) and the Western States Petroleum Association. The Department is the state agency with authority to implement the California Carpenter-Presley-Tanner Hazardous Substance Account Act (the Act) (§§ 25300 et seq., 25351.5, 25312). The Western States Petroleum Association is a trade association whose members, according to its amicus application, are responsible for over 90 percent of the petroleum production on the west coast of the United States.

County of Los Angeles Department of Health Services (Health Services) pertaining to cleanup. The assessment and the remedial work were performed in conjunction with Health Services. KFC spent over $211,000 to clean up the site.

KFC maintained the contamination was caused by the Meghrigs' negligence in operating a gasoline station on the property before they sold it to KFC. KFC requested reimbursement from the Meghrigs for the cost of cleanup. The Meghrigs refused.

On December 9, 1991, KFC filed an environmental cost recovery action under section 25363.[4] KFC's operative first amended complaint also contained, inter alia, causes of action based on private and public nuisance.

The Meghrigs filed a demurrer to the first amended complaint on the grounds the cost-recovery action was precluded by the petroleum exclusion found in section 25317, and the remaining causes of action were barred by the statute of limitations and other grounds.

The trial court sustained the demurrer without leave to amend as to all causes of action and dismissed the action. This appeal followed.

## CONTENTIONS

KFC contends: (1) the trial court erred in failing to defer to the Department's interpretation of the petroleum exclusion; (2) it is entitled to amend to allege a continuing nuisance and a continuing trespass.

## DISCUSSION

1. *Standard of review.*

█ A demurrer serves to test the sufficiency of a pleading by raising questions of law. (*Buford* v. *State of California* (1980) 104 Cal.App.3d 811, 818 [164 Cal.Rptr. 264].) When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) The allegations are regarded as true and are liberally construed with a view to attaining substantial justice. (*Shaeffer* v. *State of California* (1970) 3

---

[4]Section 25363 states: "(a) [A]ny party found liable for any costs or expenditures recoverable under this chapter who establishes by a preponderance of the evidence that only a portion of those costs or expenditures are attributable to that party's actions, shall be required to pay only for that portion."

Cal.App.3d 348, 354 [83 Cal.Rptr. 347]; *King* v. *Central Bank* (1977) 18 Cal.3d 840, 843 [135 Cal.Rptr. 771, 558 P.2d 857].)

When a demurrer is sustained without leave to amend, we decide whether there is a reasonable possibility the defect can be cured by amendment. If it can, the trial court abused its discretion and we reverse; if not, there was no abuse of discretion and we affirm. (*Blank* v. *Kirwan, supra,* 39 Cal.3d at p. 318.)

### 2. *Cost recovery action barred by statutory petroleum exclusion.*

The recent case of *Ulvestad* v. *Chevron U.S.A., Inc.* (C.D.Cal. 1993) 818 F.Supp. 292, is factually very similar to the one before us. There, Ulvestad owned property in Santa Ana which was contaminated with gasoline leaked from underground storage tanks. A former owner built a filling station on the property in 1926, and installed four underground storage tanks between 1926 and 1938. In 1953 Signal Oil Company, predecessor of Chevron, U.S.A., Inc., leased the property. Ultimately, title to the property passed to Ulvestad. Thereafter, the service station was dismantled and three of the four underground tanks were extracted. Ulvestad was alerted to the existence of a fourth tank, removed it in 1989, and discovered that gasoline from the tanks had contaminated the soil and groundwater. (*Id.,* at p. 293.)

Ulvestad sued Chevron on various theories. Chevron argued Ulvestad's causes of action under the Act (§§ 25300-25395) should be dismissed because refined petroleum is excluded from the reach of the Act. Chevron pointed out the Act contains a "petroleum exclusion" that removes petroleum from the Act's definition of "hazardous substances." Ulvestad, joined by amicus curiae, the Department (which is also amicus curiae in the instant case), argued the exclusion did not apply to refined petroleum products such as gasoline. (*Ulvestad* v. *Chevron U.S.A., Inc., supra,* 818 F.Supp. at p. 293.)

After an independent analysis of the issues, we have concluded the well-reasoned opinion of District Judge Taylor in *Ulvestad* v. *Chevron U.S.A., Inc., supra,* 818 F.Supp. at pages 293-297, correctly treats the issues and accordingly adopt it as our own.[5] (See *Lugosi* v. *Universal Pictures* (1979) 25 Cal.3d 813, 816 [160 Cal.Rptr. 323, 603 P.2d 425, 10 A.L.R.4th 1150].) The *Ulvestad* opinion, with appropriate deletions and additions, is as follows:[6]

This case raises the issue [] whether the petroleum exclusion provision of California's Hazardous Substance Account Act excludes refined petroleum

---

[5]We note the Department also was an amicus curiae in *Ulvestad,* and was represented by the same attorneys who raised similar arguments as here.

[6]Brackets together, in this manner [ ], are used to indicate deletions from the opinion of the district court; brackets enclosing material are, unless otherwise indicated, used to denote

from the Act's regulation. The court holds that, like the federal act (CERCLA [Comprehensive Environmental Response, Compensation and Liability Act] or "Superfund") after which it is modeled, the California Act excludes regulation of refined petroleum, including gasoline.
[ ]

Section 25316 of [the Act] defines "hazardous substances" broadly to include a number of different dangerous chemicals listed in various state and federal laws. However, section 25317 of the Act excludes from the definition (and therefore the Act) "[p]etroleum, including crude oil or any fraction thereof which is not otherwise specifically listed or designated as a hazardous substance . . . ." Cal. Health & Safety Code § 25317. The issue in this case is whether the exclusion applies to refined petroleum products, such as gasoline.
[ ]

## A.  *Plain Meaning*

The California Supreme Court has long held that analysis of state statutes begins with "the fundamental premise that the objective of statutory interpretation is to ascertain and effectuate legislative intent." *Kimmel* v. *Goland*, 51 Cal.3d 202, 208, 271 Cal.Rptr. 191, 793 P.2d 524 (1990) (citations omitted). In ascertaining intent, the court "look[s] first to the language of the statute, giving effect to its 'plain meaning.' " *Id.* at p. 209, 271 Cal.Rptr. 191, 793 P.2d 524 (citing *Tiernan* v. *Trustees of Cal. State University & Colleges*, 33 Cal.3d 211, 218-219, 188 Cal.Rptr. 115, 655 P.2d 317 (1982)).

If the plain meaning is apparent, this court need not go further. The California Supreme Court is clear concerning statutory interpretation:

To determine the intent of legislation, we first consult the words themselves, giving them their usual and ordinary meaning. When "statutory language is . . . clear and unambiguous there is no need for construction, and courts should not indulge in it." The plain meaning of words in a statute may be disregarded only when that meaning is " 'repugnant to the general purview of the act,' or for some other compelling reason . . . ."

*DaFonte* v. *Up-Right, Inc.* 2 Cal.4th 593, 601, 7 Cal.Rptr.2d 238, 828 P.2d 140 (1992) (citations omitted).

The starting point for deciding whether the terms of the Act apply to gasoline is section 25317's petroleum exclusion. That section states expressly that petroleum, crude oil, and crude oil "fractions" are excepted from

---

insertions or additions by this court. (See *Lugosi* v. *Universal Pictures, supra*, 25 Cal.3d at p. 816.)

the Act's reach, provided those fractions are not themselves listed hazardous substances. A crude oil fraction is a mixture or chemical compound derived from crude oil through "cracking" or a distillation process; as a compound obtained through the distillation process, gasoline is universally acknowledged to be a crude oil fraction. *See Hawley's Condensed Chemical Dictionary* 892 (11th ed. 1987) (Gasoline is among "[t]he most important petroleum fractions, obtained by cracking or distillation . . . ."). Thus, because gasoline is a crude oil fraction, but is not a specifically listed hazardous substance, *see* Cal. Health & Safety Code §§ 25316(a)-(f), a plain reading of the statute reveals gasoline is exempt from the Act.

This is the same result reached by the Ninth Circuit in interpreting the almost identical statute in the petroleum exclusion of the federal Superfund law.[7] In *Wilshire Westwood Assoc. v. Atlantic Richfield*, 881 F.2d 801, 803 (9th Cir. 1989) the Ninth Circuit considered whether leaded gasoline and its various constituent parts—including benzene, toluene, and xylene [] fall within the scope of the federal CERCLA petroleum exclusion. The court found the "plain meaning" of the exclusion in CERCLA made it "unnecessary" to resort to legislative history and agency interpretation of the exclusion. The court held that "the petroleum exclusion in CERCLA does apply to unrefined and refined gasoline even though certain of its indigenous components and certain additives during the refining process have themselves been designated as hazardous substances within the meaning of CERCLA." *Id.* at 810. The logic in *Wilshire Westwood* is compelling here.
[]

B. *Agency Interpretation*

Moving beyond the plain meaning of the Act, plaintiff argues that the Amicus [] Department [] has, since the Act's inception, interpreted the petroleum exclusion in a manner supporting the plaintiff's position. As the agency responsible for enforcing the Act, the Department's interpretation should ordinarily be accorded considerable weight and deference. However, the Department's interpretation is not persuasive here.

First, the Department's interpretation of the petroleum exclusion provision is directly contrary to the EPA's and Ninth Circuit's interpretation of the nearly identical provision within the federal Superfund statute. *Wilshire Westwood*, 881 F.2d at 803-810.

---

[7]The petroleum exclusion provision in [CERCLA] is contained within the statute's definition of the term "hazardous substance" and states: "The term [] does not include petroleum, including crude oil or any fraction thereof which is not otherwise specifically listed or designated as a hazardous substance. . . ." 42 U.S.C. § 9601(14).

Second, the cited cases deferring to an agency's interpretation of a state statute are distinguishable because the interpretation was generally adopted after formal notice and comment proceedings. *See, e.g., Pitts* v. *Perluss*, 58 Cal.2d 824, 832, 27 Cal.Rptr. 19, 377 P.2d 83 (1962) (formally adopted regulation on disability insurance held reasonable where intricate and technical nature of the subject matter not within expertise of the court). Here, on the other hand, the Department has not formally promulgated regulations concerning its interpretation of the Act's petroleum exclusion provision. Instead, it declares only that the interpretation is necessary to reflect the Act's "broad remedial purpose." This is not compelling.

[Therefore, the Department's position is not entitled to deference as an agency interpretation. " 'To hold otherwise might help perpetuate the problem' of ' " 'house rules of the agency' " ' which are promulgated without public notice, opportunity to be heard, filing with the Secretary of State, *and* publication in the California Code of Regulations." (*Grier* v. *Kizer* (1990) 219 Cal.App.3d 422, 435 [268 Cal.Rptr. 244], citing *Armistead* v. *State Personnel Board* (1978) 22 Cal.3d 198, 205 [149 Cal.Rptr. 1, 583 P.2d 744], italics added.)]

Amicus Department argues that its narrow interpretation of the Act's petroleum exclusion clause is consistent with Congress' express intent in CERCLA to allow states to regulate more comprehensively than is permitted under federal law (citing CERCLA's savings provision at 42 U.S.C. § 9614). However, although the California Legislature may have been empowered by Congress to strictly regulate the clean-up of petroleum spills as hazardous substances, the California statute's wording reveals the Legislature declined to do so. The court cannot ignore the plain wording of the Act, which, like its federal counterpart, excludes refined petroleum from the ambit of the Act's influence.

The fact that the Legislature has annually reviewed and approved the Department's expenditure of funds from both the Act and the 1984 Bond Fund for refined petroleum contamination remediation cannot be taken as tacit approval of the Department's position here. In fact, it appears the Legislature acknowledges the limited reach of the Act concerning refined petroleum spills: In 1989, the Legislature established the Petroleum Underground Storage Tank Cleanup Program in California Health and Safety Code § 25299. That chapter's express purpose is to deal with the problems associated with leaking underground petroleum tanks, and nowhere does that

statute alter or amend the California Superfund's petroleum exclusion provision. *See* Cal. Health & Safety Code § 25299.10 (stating Legislative findings concerning leaking underground petroleum tanks).[8]
[]

In light of the plain meaning of section 25317's language excluding refined petroleum and its constituents from the Act, the EPA's and Ninth Circuit's broad interpretation of the nearly identically-worded "petroleum exclusion" in federal CERCLA, and the apparent intent of the Legislature to leave refined petroleum out of the Act, [refined petroleum is excluded from the reach of the Act].

The court realizes the concerns this ruling may raise. Without clarifying action by the California Legislature, [this] holding could impede future efforts by the Department to enforce clean-ups under the Act involving refined petroleum spills. Nevertheless, the plain meaning of the Act's petroleum exclusion is inescapable. In the absence of controlling authority, this court is compelled to reach this conclusion. It is for the California Legislature, not the courts, to clarify the Act if the Legislature wants to include refined petroleum. [] [End of district court opinion.]

3. *This court's conclusion re the petroleum exclusion.*

In view of the above, we conclude the petroleum exclusion of section 25317 applies to refined petroleum products such as gasoline. The Department contends *Ulvestad* erred in failing to defer to the Department's interpretation and that the Legislature has approved the Department's administrative construction of the statute. However, the Legislature has not amended the statute in light of *Ulvestad*, and it therefore appears the Legislature has approved *Ulvestad*'s reading of the petroleum exclusion.

Accordingly, the trial court properly sustained the demurrer to the first cause of action for cost recovery under section 25363 without leave to amend.

---

[8]The California statute was adopted pursuant to United States Code Title 42, Chapter 82, Subchapter IX. Section 6991b(h), added by Section 205 of the Superfund Amendments and Reauthorization Act of 1986 ("SARA"), Pub.L.99-499, 100 Stat. 1613, establishes a separate program to respond to petroleum leaking from underground storage tanks and allows underground storage tanks to be regulated pursuant to a state program, rather than a federal program, in states authorized to implement these provisions. Both Congress and the California Legislature, therefore, have shown a preference that spilled petroleum and hazardous substances be treated separately. *See also Wilshire Westwood Assoc.* v. *Atlantic Richfield,* 881 F.2d 801, 805-08 (9th Cir. 1989) (examining legislative history of Superfund's petroleum exclusion clause in light of later amendments to the statute and concluding that Congress intended to address spilled petroleum from underground tanks separately from spilled hazardous wastes).

4. *Cause of action may be stated against former owners for continuing nuisance based on soil contamination.*

   a. *General principles.*

Civil Code section 3479 defines a nuisance as "[a]nything which is injurious to health, or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, . . . ." A public nuisance is one which affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon individuals may be unequal. (Civ. Code, § 3480.) Every other nuisance is private. (Civ. Code, § 3481.) However, a plaintiff may maintain a private nuisance action based on a public nuisance when the nuisance causes an injury to plaintiff's private property or to a private right incidental to such private property. (Civ. Code, § 3493; *Newhall Land & Farming Co.* v. *Superior Court* (1993) 19 Cal.App.4th 334, 342 [23 Cal.Rptr.2d 377] (review den.).)

   b. *No merit to the Meghrigs' theory they cannot be held liable for creating a nuisance on their own property.*

■■■ Tracking Civil Code section 3479, KFC pled the Meghrigs created a nuisance by improper management of petroleum on the property, resulting in a condition injurious to health or an obstruction to the free use of the property.

The Meghrigs do not contend the alleged soil contamination does not fall within the statutory definition of nuisance. Instead, the Meghrigs argue KFC cannot state a cause of action for private nuisance because the Meghrigs consented to the use of their own land and there was no invasion of another's interest in the use and enjoyment of the land. In other words, the Meghrigs submit they were entitled to contaminate their own property. The argument fails.

Under *Newhall Land & Farming Co.* v. *Superior Court, supra,* 19 Cal.App.4th at pages 341-345, a landowner may state a cause of action for a private continuing nuisance against a previous owner whose activity contaminated the property.[9]

In *Newhall* the defendants similarly argued "that, since they were the owners of the property at the time of the contamination, they could not be

---

[9]*Capogeannis* v. *Superior Court* (1993) 12 Cal.App.4th 668, 673 [15 Cal.Rptr.2d 796], also permitted a nuisance claim against a former owner for contamination caused by leaking

found liable to themselves for creating a nuisance. Consequently, . . . Newhall, as a successor-in-interest, [could not] state a nuisance claim against them arising out of that contamination. According to [the defendants], there cannot be a continuing nuisance where no nuisance existed at the inception of the wrongful condition." (*Newhall Land & Farming Co.* v. *Superior Court*, *supra*, 19 Cal.App.4th at p. 344.)

*Newhall* found "a fundamental flaw in this argument. Regardless of whether a potential plaintiff existed at the time of the contamination, the fact remains that [defendants'] conduct created a condition on the property which was, and which remains, injurious to health. Once [defendants] sold their interests without disclosing the contamination, other ·parties became involved who, upon discovery of the contamination, could bring a claim against [defendants] in an attempt to force them to accept responsibility for their creation of a nuisance. [I]n the context of this case, the time of the creation of the nuisance is immaterial with respect to [defendants'] liability." (*Newhall Land & Farming Co.* v. *Superior Court, supra*, 19 Cal.App.4th at p. 344.)

Pursuant to *Newhall*'s rationale, the Meghrigs' status as former owners does not immunize them from a nuisance action arising from their activity on the property.

Nonetheless, the Meghrigs contend *Newhall* is inapposite because there the plaintiffs alleged the hazardous substances leached through the soil and polluted the groundwater, resulting in a public nuisance. (*Newhall Land & Farming Co.* v. *Superior Court, supra*, 19 Cal.App.4th at p. 341.) However, *Newhall* did not turn on that point. After noting the allegations of polluted groundwater supported the existence of a *public* nuisance (*ibid.*), *Newhall* stated ". . . a public nuisance does not in itself create a private nuisance as well. [¶] ■ '[A] private nuisance is a civil wrong based on disturbance of rights in land while a public nuisance is not dependent upon a disturbance of rights in land but upon an interference with the rights of the community at large.' [Citation.]" (*Id.*, at pp. 341-342.)

■ *Newhall* proceeded to hold the plaintiff adequately had "state[d] a claim for a *private* nuisance" because it alleged it was unable to sell its property due to the contamination and had spent money investigating the pollution. (*Newhall Land & Farming Co.* v. *Superior Court, supra*, 19 Cal.App.4th at p. 342, italics added.) Accordingly, the Meghrigs' attempt to distinguish *Newhall* as a public nuisance case is without merit.

---

underground fuel storage tanks. However, the decision is not helpful because it did not set forth the court's rationale for allowing the nuisance claim. (See *ibid.*)

The Meghrigs also argue *Newhall* is inconsistent with California law and should not be followed. Given our Supreme Court's recent denial of review in *Newhall*, we decline the Meghrigs' invitation to do so.

### c. *KFC entitled to leave to amend to allege a continuing nuisance.*

■ KFC contends it should be granted leave to amend to allege a *continuing* nuisance so as to withstand demurrer based on the statute of limitations.[10]

In the complaint, KFC alleged the contamination of the property was discovered in October 1988. KFC commenced this action on or about December 9, 1991. The issue is whether the cause of action is barred by the applicable three-year statute of limitations. (Code Civ. Proc., § 338, subd. (b); *Mattos* v. *Mattos* (1958) 162 Cal.App.2d 41, 43 [328 P.2d 269].)

■ If a nuisance is permanent, the plaintiff ordinarily must bring one action for all past, present and future damage within three years after the permanent nuisance is created. (*Baker* v. *Burbank-Glendale-Pasadena Airport Authority* (1985) 39 Cal.3d 862, 868-869 [218 Cal.Rptr. 293, 705 P.2d 866].) If on the other hand the nuisance is continuing, every repetition of the continuing nuisance is a separate wrong, subject to a new and separate limitation period for which the plaintiff may bring successive actions for damages until the nuisance is abated even though an action based on the original wrong may be barred. (*Phillips* v. *City of Pasadena* (1945) 27 Cal.2d 104, 107-108 [162 P.2d 625]; *Capogeannis* v. *Superior Court, supra*, 12 Cal.App.4th at p. 676.)

"Where a nuisance is of such character that it will presumably continue indefinitely it is considered permanent, and the limitations period runs from the time the nuisance is created. [Citations.]" (*Phillips* v. *City of Pasadena, supra*, 27 Cal.2d at p. 107.) For example, construction of a building partly upon the land of another is viewed as a permanent encroachment thereon and the entire cause of action accrues when the encroachment occurs. (*Mattos* v. *Mattos, supra*, 162 Cal.App.2d at p. 43.)

However, "if the nuisance may be discontinued at any time it is considered continuing in character. [Citations.]" (*Phillips* v. *City of Pasadena, supra*, 27 Cal.2d at p. 107; accord *Baker* v. *Burbank-Glendale-Pasadena Airport Authority, supra*, 39 Cal.3d at p. 869.) In case of doubt as to the

---

[10]We note the statute of limitations is no defense to an action brought by a public entity to abate a public nuisance. (Civ. Code, § 3490; *Mangini* v. *Aerojet-General Corp.* (1991) 230 Cal.App.3d 1125, 1142 [281 Cal.Rptr. 827].)

permanency of the injury, the plaintiff may elect whether to treat a particular nuisance as permanent or continuing. (*Baker, supra,* 39 Cal.3d at p. 870.)

In *Mangini* v. *Aerojet-General Corp., supra,* 230 Cal.App.3d 1125, where the defendants allegedly contaminated the property with hazardous waste, the plaintiffs were given leave to allege a continuing nuisance and to seek damages sustained within three years of the date of filing the complaint. (Code Civ. Proc., § 338, subd. (b); *Mangini, supra,* 230 Cal.App.3d at pp. 1131, 1148.)

*Mangini* reasoned "plaintiffs' land may be subject to a continuing nuisance even though defendant's offensive conduct ended years ago. That is because the 'continuing' nature of the nuisance refers to the continuing damage caused by the offensive condition, not to the acts causing the offensive condition to occur." (*Mangini* v. *Aerojet-General Corp., supra,* 230 Cal.App.3d at p. 1147.) Further, whether contamination by toxic waste is a continuing injury is ordinarily a question of fact turning on the nature and extent of the contamination. (*Id.,* at p. 1148; accord, *Capogeannis* v. *Superior Court, supra,* 12 Cal.App.4th at p. 683.)

Here, in view of the nature of the alleged nuisance, namely, soil contamination, we cannot say as a matter of law the nuisance was permanent. Accordingly, KFC is entitled to leave to amend to allege a continuing nuisance.

### 5. *KFC entitled to amend to allege a continuing trespass.*

Lastly, KFC seeks leave to amend to add a new cause of action for continuing trespass.

A continuing trespass theory in a situation such as this, i.e., where contaminants have been left on the property by a prior owner, is sanctioned by the Restatement Second of Torts. (*Mangini* v. *Aerojet-General Corp., supra,* 230 Cal.App.3d at p. 1148; *Newhall Land & Farming Co.* v. *Superior Court, supra,* 19 Cal.App.4th at p. 345; compare *Capogeannis* v. *Superior Court, supra,* 12 Cal.App.4th at pp. 674-675.) Restatement Second of Torts, section 161(1) provides: " 'A trespass may be committed by the continued presence on the land of a structure, chattel, or other thing which the actor has *tortiously* placed there, whether or not the actor has the ability to remove it.' Under this definition, 'tortious conduct' denotes that conduct, whether of act or omission, which subjects the actor to liability under the principles of the law of torts. (Rest.2d Torts, § 6.)" (*Newhall, supra,* 19 Cal.App.4th at p. 345, italics added.)

A *private* nuisance is a " 'civil wrong' " (*Newhall Land & Farming Co.* v. *Superior Court, supra,* 19 Cal.App.4th at p. 342; *Venuto* v. *Owens-Corning*

*Fiberglas Corp.* (1971) 22 Cal.App.3d 116, 124 [99 Cal.Rptr. 350]), which by definition is tortious. (*Bihun* v. *AT&T Information Systems, Inc.* (1993) 13 Cal.App.4th 976, 1002 [16 Cal.Rptr.2d 787], disapproved on other grounds in *Lakin* v. *Watkins Associated Industries* (1993) 6 Cal.4th 644, 664 [25 Cal.Rptr.2d 109, 863 P.2d 179]; *Stephen K.* v. *Roni L.* (1980) 105 Cal.App.3d 640, 642 [164 Cal.Rptr. 618, 31 A.L.R.4th 383].) One who causes a *public* nuisance likewise is considered a tortfeasor. (*Newhall, supra,* 19 Cal.App.4th at p. 346.) Because the creation of either a private or public nuisance is tortious, such conduct may support a claim for trespass.[11]

With respect to the issue of the statute of limitations, the analysis is essentially the same for trespass as it is for nuisance. (*Mangini* v. *Aerojet-General Corp., supra,* 230 Cal.App.3d at p. 1148; *Capogeannis* v. *Superior Court, supra,* 12 Cal.App.4th at p. 675.)

Further, as discussed above in the context of the nuisance cause of action, the concept of consent is unavailing to a former owner whose activities contaminated the property. (*Newhall Land & Farming Co.* v. *Superior Court, supra,* 19 Cal.App.4th at p. 347.)

Accordingly, KFC is entitled to amend to plead a continuing trespass based on the alleged soil contamination of the property by the Meghrigs.

### DISPOSITION

The judgment is reversed in part and remanded; KFC is entitled to file an amended complaint setting forth causes of action for continuing nuisance and continuing trespass. The judgment is otherwise affirmed.

KFC to recover costs on appeal.

Kitching, J., and Hinz, J.,* concurred.

---

[11]Because one who causes a public nuisance is considered a tortfeasor and is subject to tort liability regardless of whether a private individual can also recover (*Newhall Land & Farming Co.* v. *Superior Court, supra,* 19 Cal.App.4th at p. 346; *Leslie Salt Co.* v. *San Francisco Bay Conservation etc. Com.* (1984) 153 Cal.App.3d 605, 619 [200 Cal.Rptr. 575]), we disagree with *Capogeannis*'s reasoning that no trespass theory could be stated because the former owner's alleged participation in contaminating the soil and groundwater was at most a public nuisance. (*Capogeannis* v. *Superior Court, supra,* 12 Cal.App.4th at pp. 674-675; see *Newhall, supra,* 19 Cal.App.4th at p. 346.)

*Retired Associate Justice of the Court of Appeal, Second District, sitting under assignment by the Chairperson of the Judicial Council.