Filed 10/11/23  In re Jordan M. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

|  |  |
|---|---|
| In re JORDAN M., a Person Coming Under the Juvenile Court Law. | B323565 (Los Angeles County Super. Ct. No. 20CCJP05218C) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Appellant,<br><br>        v.<br><br>TIERRA M.,<br><br>        Defendant and Appellant. |  |

APPEALS from orders of the Superior Court of Los Angeles County, Pete R. Navarro, Juvenile Court Referee.  Appeal and cross-appeal dismissed.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Melania Vartanian, Deputy County Counsel, for Plaintiff and Appellant.

Elizabeth C. Alexander, under appointment by the Court of Appeal, for Defendant and Appellant.

_____

Tierra M. (Mother) appeals from the juvenile court's jurisdiction findings and disposition order declaring six-month-old Jordan M. a dependent of the court under Welfare and Institutions Code[1] section 300, subdivision (j). Mother contends there was insufficient evidence to support the juvenile court's finding that Mother's failure to protect Jordan's older half-brothers, 12-year-old Tyler W. and 11-year-old Tyrin W., from sexual abuse placed Jordan at substantial risk of harm.

The Los Angeles County Department of Children and Family Services (Department) cross-appeals from the juvenile court's order dismissing the same factual allegations made under section 300, former subdivision (b)(1).[2] The Department argues Mother's unresolved mental health issues, poor decision-making,

---

[1] Further statutory references are to the Welfare and Institutions Code.

[2] The Legislature amended Welfare and Institutions Code section 300, effective January 1, 2023, in part by revising subdivision (b)(1) to specify in separate subparagraphs ways in which a child may come within the jurisdiction of the juvenile court due to the failure or inability of the child's parent or guardian to adequately supervise or care for the child.

and non-cooperation with the Department create an ongoing risk of harm to Jordan.

While the appeals were pending, the juvenile court terminated jurisdiction over Jordan, granting Mother sole legal and physical custody. Because we cannot grant effective relief to Mother, we dismiss her appeal as moot. We also find the Department's cross-appeal is moot.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *The Juvenile Court Proceedings as to Tyler and Tyrin*

On September 29, 2020 the Department received a referral alleging sexual abuse and general neglect of Tyler and Tyrin. The Los Angeles County Sheriff's Department Special Victims Bureau previously received a cybercrime tip that a video depicting two children engaging in sexual acts had been uploaded on May 25, 2020 to a YouTube account. The video depicted two boys, approximately eight to 10 years old, engaging in oral and anal intercourse with each other. The YouTube account was registered to Mother. In an interview on September 29, Mother identified the boys in the video as her sons and stated she learned of the video on the day it was posted after receiving notice from a maternal aunt and from YouTube. Mother stated she told the boys what they had done was wrong, blocked content on their electronic devices, and required them to sleep in separate rooms. However, Tyrin told the social worker the brothers still sometimes slept in the same bedroom. Tyrin also reported that at the time they made the video, Mother was at work; Tyler said Mother was in her room or out getting groceries. In a subsequent interview, Tyrin said that Mother would leave them alone at

3

home all day when she had to work, including overnight, and that sometimes the boys would have nothing to eat all day.

On September 30, 2020 Tyler and Tyrin were removed from Mother. Tyler was placed on a section 5585 hold[3] because he expressed thoughts of self-harm. A few weeks later Tyrin was also placed on a section 5585 hold. Further, Tyrin demonstrated behavioral issues in his placement, including angry outbursts and breaking and throwing items.

On October 2, 2020 the Department filed a petition under section 300, former subdivision (b)(1), alleging Mother failed to provide Tyler and Tyrin with appropriate parental care and supervision because the boys engaged in oral and anal sex with each other; they recorded their behavior and uploaded the video to YouTube; and Mother knew of the video and failed to protect the children by continuing to allow them to sleep in the same room. In addition, Mother left the boys home alone without adult supervision and care on multiple occasions in September 2020, failed to provide the boys with necessary therapeutic counseling following the incident, and failed to ensure Tyler took prescribed psychotropic medication. Tyler had been hospitalized due to self-harming ideation, and Mother suffered mental and emotional problems and failed to seek mental health treatment. The petition alleged Mother's conduct placed the boys at risk of

---

[3]     The Children's Civil Commitment and Mental Health Treatment Act of 1988 (§ 5585 et seq.) provides for a 72-hour evaluation and treatment in an evaluation facility of a minor who "as a result of mental disorder, is a danger to others, or to himself or herself, or gravely disabled and authorization for voluntary treatment is not available." (§ 5585.50, subd. (a).)

4

serious physical harm. On October 7, 2020 the juvenile court detained the boys from Mother.

At the December 14, 2020 jurisdiction and disposition hearing, the juvenile court sustained the allegations (including an amended allegation as to Mother's mental and emotional problems). The court declared Tyler and Tyrin dependents of the court and removed them from Mother's custody. The court ordered Mother to participate in a parenting program for children with behavioral challenges, sex abuse awareness counseling, and individual counseling to address case issues. Mother was also ordered to participate in mental health counseling, including a psychiatric evaluation. The court granted Mother monitored visits.[4]

Mother later reported she had participated in child sexual abuse awareness classes and completed a parenting program. Mother had nine individual counseling sessions, but she terminated individual therapy because she felt it was not helping her. Tyler's caregiver reported she had to terminate Mother's monitored telephone calls with Tyler on two occasions because Mother argued with Tyler and spoke negatively about Gregory (Tyler and Tyrin's father), and Tyler's demeanor was negatively impacted when engaged with Mother. Tyrin, who was in a separate placement, continued to have serious behavioral problems, and he was hospitalized on section 5585 holds in March and May 2021 after attempting self-harm and exhibiting

---

[4] Tyler and Tyrin's father, Gregory W., did not appear at the jurisdiction and disposition hearing, although he was later granted family reunification services and visitation with Tyler and Tyrin.

assaultive behaviors. At the January 20, 2022 review hearing, the juvenile court placed Tyler in the home of Gregory and granted Mother unmonitored visits, as long as Tyrin was not present at the same time.

B. *The Juvenile Court Proceedings as to Jordan*

In March 2022 Jordan was born. On March 29 the Department received a referral alleging general neglect by Mother. On March 31 the social worker visited Mother's home, but there was no answer at the door. The social worker reached Mother by telephone, explaining the Department had received a referral and needed to meet with Mother and Jordan, but Mother responded, "'I'm in the middle of something'" and ended the call. The Department was unable to reach Mother for several months thereafter. From April to June social workers visited the home at least six times, called Mother at least seven times (leaving detailed messages), and sent Mother certified letters and emails; Mother never responded. After Jordan was born, Mother also stopped communicating with the Department regarding Tyler's and Tyrin's cases.

Gregory reported he had no contact with Mother during this period, and it appeared Mother was trying to visit Tyler and Tyrin without informing the Department. Tyrin's caregiver reported that on one occasion Mother picked Tyrin up from school when she did not have a scheduled visit. On another occasion, Mother flagged down Tyrin's school bus to visit him.

On July 1, 2022 the Department filed a petition under section 300, former subdivision (b)(1) and subdivision (j), asserting the identical allegations under both subdivisions that Mother placed Jordan at substantial risk of physical harm

6

because she failed to protect Tyler and Tyrin from sexual activity; she left Tyler and Tyrin at home without adult supervision and care, and failed to provide Tylor and Tyrin with the necessary care for their mental and emotional problems. In addition, Mother suffered from mental and emotional problems, including depression, that endangered the children, and she failed to participate in consistent medical treatment. On July 5 the juvenile court ordered Jordan detained from Mother and issued a protective custody warrant for Jordan and an arrest warrant for Mother.[5]

Mother voluntarily appeared in the juvenile court on August 5, 2022, and the court recalled the warrants. Mother reported she had been diagnosed with postpartum depression, attention deficit disorder, and adjustment order. Jordan sustained a head injury during birth and had been recently referred to a physical therapist and neurologist. The juvenile court found Mother's voluntary appearance in court indicated she was willing to cooperate with the court on a case plan, and, over the Department's objection, the court ordered Jordan released to Mother.

In the August 15, 2022 last minute information for the court, the Department reported Mother was not working and was Jordan's primary caregiver, with assistance from the maternal grandmother and aunt. Mother told the Department she had

---

[5] On July 19, 2022 the juvenile court terminated jurisdiction over Tyler, effective August 5, and released him to Gregory, granting Mother monitored visitation. On the same day the court terminated Mother's reunification services for Tyrin, finding Mother was in partial compliance with her case plan.

7

previously been receiving mental health services. However, she was unable to provide contact information for any mental health providers. Mother identified Jordan's father as a truck driver named Paul S., but he did not want to be involved in the dependency matter. Mother failed to explain why she refused to allow the Department access to Jordan for four months.

At the August 16, 2022 jurisdiction hearing, the juvenile court received the parties' exhibits, including documentation from Mother showing she had received mental health services in the past two years and had been prescribed an antidepressant, and the court took notice of the sustained findings and orders regarding Tyler and Tyrin. The Department conceded Jordan was "somewhat differently situated" from Tyler and Tyrin but argued Mother's mental and emotional problems "continue to exist and that her lack of supervision has put the older two siblings at serious risk of harm and do continue to present a risk to this newborn." The court sustained all counts of the petition under section 300, subdivision (j), as pleaded. The court found the counts "relate to neglectful supervision that relate to failure of the Mother in the siblings' case. . . . [T]he kids are still experiencing trauma from that." The court dismissed the identical allegations under former subdivision (b). The court noted it had not removed Jordan from Mother because he was a baby and there was "information that this child was being taken care of properly." The court continued the disposition hearing to await due diligence concerning Paul's parentage.

Following the jurisdiction hearing, Mother reported she had enrolled in mental health services, and Mother's new psychiatrist increased her antidepressant medicine. However,

the Department's still could not verify Mother's current mental health services.

At the September 13, 2022 disposition hearing, the juvenile court declared Jordan a dependent of the court under section 300 and ordered that Mother would retain physical custody under Department supervision. The court found, "If Mother keeps her mental health needs in check, if she complies with her psychotropic medication plan, then that goes far to ensure that this a successful home of parent order. And I am aware of the Mother's history and the court struggled at the detention hearing with its order of releasing the child. But the court is of the opinion that that the child would be the one suffering in not being able to bond with the Mother." Mother was ordered to participate in mental health treatment, including compliance with her psychotropic meditation plan, individual counseling, and a family preservation program.

Mother timely appealed, and the Department cross-appealed.[6]

---

[6] Mother also appealed from the juvenile court's orders terminating jurisdiction over Tyler and terminating Mother's reunification services as to Tyrin. Although Mother lists these orders in her opening brief, she does not present any argument as to why the court erred in issuing the orders, thereby abandoning or forfeiting any challenge to the orders. (See *Tiernan v. Trustees of Cal. State University & Colleges* (1982) 33 Cal.3d 211, 216, fn. 4 [issue not raised on appeal "deemed waived"]; *Doe v. McLaughlin* (2022) 83 Cal.App.5th 640, 653 ["An appellant abandons an issue by failing to raise it in the opening brief."]; *Swain v. LaserAway Medical Group, Inc.* (2020) 57 Cal.App.5th

On March 14, 2023, after Mother filed her opening brief on appeal, the juvenile court terminated jurisdiction over Jordan at the six-month review hearing, releasing Jordan to Mother. The court's minute order states "those conditions which would justify the initial assumption of jurisdiction under WIC section 300 no longer exist and are not likely to exist if supervision is withdrawn . . . ."[7]

## DISCUSSION

A.    *Termination of Juvenile Court Jurisdiction over Jordan Moots Mother's Appeal*

Mother's appeal challenges the sufficiency of the evidence supporting the juvenile court's jurisdiction findings as to Jordan and the disposition order based on those findings. As discussed, however, while Mother's appeal was pending, the juvenile court terminated jurisdiction over Jordan and released him to Mother with no further orders.[8] Mother's appeal is now moot.

---

59, 72 ["""Issues not raised in an appellant's brief are [forfeited] or abandoned."""].)

[7]    On July 18, 2023 we granted the Department's motion for judicial notice of the March 14, 2023 minute order.

[8]    Mother addressed the March 14, 2023 order terminating jurisdiction in her reply brief, arguing it did not moot her appeal. In its October 3, 2023 supplemental letter brief the Department argues Mother's appeal is now moot, and if we dismiss Mother's appeal on this basis, the Department's cross-appeal would also be rendered moot or nonjusticiable.

"A court is tasked with the duty "'to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.""" (*In re D.P.* (2023) 14 Cal.5th 266, 276 (*D.P.*).)  "A case becomes moot when events "'render[] it impossible for [a] court, if it should decide the case in favor of plaintiff, to grant [the plaintiff] any effect[ive] relief.'" [Citation.]  For relief to be 'effective,' two requirements must be met.  First, the plaintiff must complain of an ongoing harm.  Second, the harm must be redressable or capable of being rectified by the outcome the plaintiff seeks." (*Id.* at p. 276.)

The parents in *D.P.* appealed the juvenile court's jurisdiction finding that their infant son was at substantial risk of suffering serious physical harm from alleged physical abuse, but while their appeal was pending, the juvenile court terminated jurisdiction over the child without issuing any orders that continued to impact the parents. (*D.P., supra*, 14 Cal.5th at p. 272.)  The Supreme Court concluded with respect to the father's petition for review that the impacts of the juvenile court's jurisdiction findings were too speculative, and therefore, the father's challenge was moot. (*Id.* at p. 282.)  The court explained that "relief is effective when it 'can have a practical, tangible impact on the parties' conduct or legal status.' [Citation.]  It follows that, to show a need for effective relief, the plaintiff must first demonstrate that he or she has suffered from a change in legal status.  Although a jurisdictional finding that a parent engaged in abuse or neglect of a child is generally stigmatizing, complaining of 'stigma' alone is insufficient to sustain an appeal.  The stigma must be paired with some effect on the plaintiff's

11

legal status that is capable of being redressed by a favorable court decision." (*Id.* at p. 277.) The court provided as examples of non-moot challenges to jurisdiction findings cases in which a jurisdiction finding affects parental custody rights, limits a parent's contact with his or her child, or results in a disposition order that continues to adversely affect a parent. (*Id.* at pp. 277-278.)

In reversing the Court of Appeal's order dismissing the appeal as moot, however, the *D.P.* court emphasized that "[e]ven when a case is moot, courts may exercise their 'inherent discretion' to reach the merits of the dispute." (*D.P., supra*, 14 Cal.5th at p. 282.) The Supreme Court explained that reviewing courts will generally exercise their discretion when the case presents an issue of broad public interest that is likely to recur, there may be a recurrence of the controversy between the parties, or a material question remains for the court to determine. (*Ibid.*) The court also identified additional factors reviewing courts may evaluate when considering whether to exercise their discretion to decide a moot case, including whether a challenged jurisdiction finding could impact current or future dependency proceedings, and the nature of the allegations against the parent (with more egregious findings showing a parent's greater interest in challenging the findings). (*Id.* at pp. 285-286.) In addition, courts may consider why the appeal became moot; for example, principles of fairness may favor discretionary review of cases rendered moot "by the prompt compliance or otherwise laudable behavior of the parent challenging the jurisdictional finding on appeal." (*Id.* at p. 286.) Further, "[i]t would perversely incentivize noncompliance if mootness doctrine resulted in the availability of appeals from

jurisdictional findings only for parents who are less compliant or for whom the court has issued additional orders." (*Ibid.*)

In her reply brief, Mother concedes the termination of jurisdiction over Jordan and his release to Mother without any orders that continue to impact Mother render her appeal moot. However, Mother urges us to exercise our discretion to consider her appeal because of the "particularly pernicious or stigmatizing" nature of the sustained allegations concerning Mother's failure to protect Tyler and Tyrin's from sexual abuse. (See *D.P., supra*, 14 Cal.5th at pp. 285-286 ["The exercise of discretionary review may also be informed by whether the jurisdictional finding is based on particularly pernicious or stigmatizing conduct."].) Mother relies on *In re M.W.* (2015) 238 Cal.App.4th 1444, 1452, in which the Court of Appeal exercised its discretion to review (and then reversed) a jurisdiction finding under section 300, subdivision (d), that the mother failed to protect her children from a substantial risk of sexual abuse by the father, even though the mother did not challenge the court's exercise of jurisdiction based on the mother's abuse of alcohol and pain medication, reasoning a sexual-abuse finding is "pernicious" and "carries a particular stigma."

Although the jurisdiction finding that Mother failed to protect Tyler and Tyrin from sexual activity can fairly be considered stigmatizing, in contrast to *In re M.W.*, the juvenile court here made the identical jurisdiction findings with respect to the two boys, which are now final. Thus, regardless of our ruling in this case, the findings as to Tyler and Tyrin will remain in the record. In adjudicating Jordan's petition in 2022, the juvenile court made no additional findings that would unduly stigmatize

Mother; to the contrary, the court found Mother could retain physical custody of Jordan because the evidence showed she had been providing proper care to him.

Mother argues discretionary review is also warranted because she promptly complied with her case plan and, as discussed in *D.P., supra*, 14 Cal.5th at page 286, it would create a perverse incentive if Mother's compliance resulted in forfeiture of her ability to challenge the adverse jurisdiction findings.[9]  While we commend Mother for her compliance, this factor alone does not justify reaching the merits of this appeal.  (See *ibid.* ["no single factor is necessarily dispositive of whether a court should exercise discretionary review of a moot appeal"].)  Because the jurisdiction findings as to Tyler and Tyrin formed the principal basis for jurisdiction over Jordan, Mother's current appeal does not raise any issues that are likely to impact Mother or pose a recurring question of public interest.  (*Id.* at p. 282.)

B.     *Dismissal of Mother's Appeal Renders the Cross-appeal Moot*

The Department contends in its cross-appeal that the juvenile court erred by dismissing the allegations with respect to Jordan under section 300, former subdivision (b)(1).  As the Department now concedes, the cross-appeal is also moot.

---

[9]     The record does not include any post-appeal status reports that would reflect Mother's compliance with her case plan. However, given the juvenile court's order terminating jurisdiction at the six-month review hearing, we assume Mother complied with her case plan at least within the first six months.

The Supreme Court explained in *D.P., supra*, 14 Cal.5th at pages 283 to 284, "where there are multiple findings against one parent[,] the validity of one finding may render moot the parent's attempt to challenge the others." (See *In re I.J.* (2013) 56 Cal.4th 766, 773 ["'When a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence.'"].)

Our dismissal of Mother's appeal as moot operates as an affirmance of the juvenile court's jurisdiction findings under section 300, subdivision (j), and the disposition order declaring Jordan a dependent of the court. (*D.P., supra*, 14 Cal.5th at p. 285 ["dismissal of an appeal for mootness operates as an affirmance of the underlying judgment or order"]; *In re Jasmon O.* (1994) 8 Cal.4th 398, 413 ["Normally the involuntary dismissal of an appeal leaves the judgment intact."].) Because the juvenile court had jurisdiction over Jordan under section 300, subdivision (j), we cannot provide the Department effective relief regardless of whether the court properly dismissed the identical allegations under section 300, former subdivision (b)(1). And, as with Mother's challenges, we see no reason to exercise our discretion to consider the Department's cross-appeal.

## DISPOSITION

Mother's appeal and the Department's cross-appeal are dismissed as moot.


FEUER, J.

We concur:


PERLUSS, P. J.


MARTINEZ, J.

16